## MORGAN vs. BURROWS and another.

45 211
77 312

WILLS: EVIDENCE. *Construction of will. Latent ambiguity: Parol evidence.*

1. A will described one boundary of that part of the real estate devised to defendant B., in terms which, when applied to the actual condition of the whole estate, are found applicable to two different lines. *Held,* that this was a *latent* ambiguity, which might be explained by parol evidence of the testator's intent; and that declarations of the testator made at the time of executing the will, as to the *thing* or object to which the words related, were admissible in evidence. *Ganson v. Madigan,* 15 Wis., 144, as to this point, approved and followed.
2. Various clauses of the will (for which see the opinion) construed, and *held,* upon the whole, to concur with the parol evidence in supporting the judgment below as to the true boundary of the land devised to B.

APPEAL from the Circuit Court for *Rock* County.

Action to recover the possession of an undivided one-fourth of about 21 acres of land, being a portion of the W. $\frac{1}{2}$ of the N. W. $\frac{1}{4}$ of section 26, in township 4 north, of range 13 east, in the county of Rock. About 50 acres of the eighty-acre lot, being the north portion of it, except between two and three acres in the northwest corner, was owned by one James Sowle and was occupied by him for many years, and until his death in 1873. The whole tract was called his homestead. Before his death, James Sowle executed his will, devising this land in parcels to his widow and some of his children, as will hereafter appear. Such will has been duly admitted to probate. The plaintiff and the defendant *Mary S. Burrows* are children of James Sowle, and both claim title to the land in controversy through the will of their father. The case turns upon the construction of certain clauses in the will. The defendant *Crumb* is in possession of the land as tenant of *Mrs. Burrows,* and holds the same under her to the exclusion of the plaintiff.

The portions of the will material to the case are as follows: "To whom it may concern, this may certify that I, James Sowle, of Milton, Rock county, state of Wisconsin, do now make my will to dispose of my real and personal estate to my children.

" 1st. I will to my son David D. Sowle, large barn and yard, beginning at the southwest corner, and thence east on the board fence to the rail fence. Thence on the rail fence north to the road. Thence west to Fannie Benedict's land. Thence south to her corner. Thence west on her line to the road, and to the place of beginning on section 26.     *     *     *

                                    my daughter
" 2d. I will to Mary Burrows the homestead from Burdick's
                      ʌ            Lar large
line south to the north to the barn ʌ yard; thence east to Hutson's line.     *     *     *     *     *     *

" 5. I also will to my true and loving wife, Almeda Bishop Sowle, her living out of my personal estate, and that part of the homestead lot not heretofore mentioned, with the buildings and appurtenances thereon standing, bounded as follows, to wit: On the north by land of D. D. Sowle and the highway leading to Lima; east by land of D. T. Hudson; south by land this day willed by me to my daughter Mary Burrows; freely to enjoy during her natural life, and afterwards to be divided among my children the same as my other estate not disposed of by this my last will."

These devises will be more intelligible if reference be had to the following plat of the testator's homestead:

The testator left eight children surviving him. Soon after his death, his widow sold and conveyed to his children all her interest in his homestead lot. One of his children afterwards conveyed his one-eighth interest in such homestead lot to the plaintiff.

On the trial (which was had before the judge, a jury having been waived), the defendants offered the plaintiff a judgment for the recovery of an undivided one-fourth of the tract of 6⅓ acres. The land in controversy is an undivided one-fourth of the 14₁₂⁷-acre tract; and the question is, whether the line A or the line B on the plat is the north line of the land devised to *Mrs. Burrows.*

The judge found that line B is *Mrs. Burrows'* north line, and rendered judgment for the plaintiff for the recovery of an undivided one-fourth of both the 6⅓ acres and the 14₁₂⁷

Morgan vs. Burrows and another.

EXPLANATIONS. — 1. Large barn. 2. Small barn. 3. Dwelling house. 4. Yard or lot. 5. Yard or calf pasture. 6. Small yard. The lines, except the dotted lines, denote fences. There are other fences on the tract, but their location is not material. There are also some other small buildings on the tract of $14\frac{7}{12}$ acres, near the dwelling house; but there are no buildings upon the $6\frac{1}{3}$-acre tract.

acres, in accordance with the finding of fact. The case is further stated in the opinion.

The defendants appealed from the judgment.

For the appellants, there was a brief by *Bennett & Sale,* and oral argument by *Mr. Bennett.* They contended, 1. That it was plain from the evidence that the testator uniformly designated the northern barn (marked 1 on the plat) as the "large barn," and the yard connected therewith as the "large barn-yard." 2. That the words, "with the buildings and appurtenances," in the 5th item, might be understood as referring to that part of the homestead lot already mentioned in the 1st and 2d items. 3. That, if otherwise, they must be rejected as inconsistent with the remainder of the description of the lands devised to Mrs. Sowle; and the principle, "*falsa demonstratio non nocet,*" applies. Shep. Touch., 90; Broom's Leg. Max., 490; *Crosby v. Bradbury,* 20 Me., 61; *Jackson v. Clark,* 7 Johns., *217; *Parks v. Loomis,* 6 Gray, 467. 4. That the court erred in admitting testimony as to what the testator said in reply to the question what he meant by the words "barn large yard." 1 Redf. on Wills, 496-8; *Brown v. Selwin,* Cas. temp. Talbot, 240; 3 Brown's Cas. Parl., 607; 1 Brown's Ch. Cas., 477; *Lord Cheyney's Case,* 5 Coke, 68a; *Vernon's Case,* 4 Coke, 1-4; *Bertie v. Falkland,* 1 Salk., 231; *Towers v. Moore,* 2 Vern. Ch., 98; *Bennet v. Davis,* 2 P. Wms., 316, 318; *Fowler v. Fowler,* 3 id., 353-4; *Fry v. Porter,* 1 Mod., 310; *Sanford v. Raikes,* 1 Merivale, 646; *Langston v. Langston,* 8 Bligh, N. S., 167; *Farrar v. Ayres,* 5 Pick., 404; *Barrett v. Wright,* 13 id., 45; *Osborne v. Varney,* 7 Met., 301; *Tucker v. Seaman's Aid Society,* id., 188; *Brown v. Saltonstall,* 3 id., 423; *Gerish v. Towne,* 3 Gray, 82, 88; *Woods v. Sawin,* 4 id., 322; *Bradley v. Bradley,* 24 Mo., 311; *Gregory v. Cowgill,* 19 id., 415; *Avery v. Chappel,* 6 Conn., 270; *Seaman v. Hogeboom,* 21 Barb., 398; *Russel v. Werntz,* 24 Pa. St., 337; *Fish v. Hubbard's Adm'rs,* 21 Wend., 651; *Ryerss v. Wheeler,* 22 id., 148; *Cromer v. Pinckney,* 3 Barb. Ch., 474; *Fouke v. Kemp,* 5 Har. & J., 135; *Asay v. Hoover,* 5 Barr, 21; *Judy v. Williams,* 2 Cart., 449;

Morgan vs. Burrows and another.

2 Sneed, 618; *Shearman v. Angel*, Bailey Ch., 351; *Aspden's Estate*, 2 Wall. Jr., 368; *Allen's Ex'rs v. Allen*, 18 How. (U. S.), 385; *Ex parte Hornby*, 2 Bradf., 420. In general, ·parol evidence of the intention of the testator is inadmissible for the purpose of explaining, contradicting or adding to the contents of the will; but its language must be interpreted according to its terms. 5 U. S. Dig., First Series, 633 et seq.; and the large number of cases there cited to the point. Parol evidence is not admissible to explain a latent ambiguity. *Davis v. Davis*, 8 Mo., 56; *Johnson v. Johnson*, 32 Ala., 637; *Domestic, etc., Missionary Society v. Reynolds*, 9 Md., 341; *Field v. Eaton*, 1 Dev. Eq., 283; *Rothmahler v. Myers*, 4 Desaus., 215; *Hyatt v. Pugsley*, 23 Barb., 285; *Terpening v. Skinner*, 30 id., 373; *Waugh v. Waugh*, 28 N. Y., 94.

*Pliny Norcross*, for the respondent, argued, 1. That the words " the large barn-yard," applied to the situation and the other facts and circumstances in evidence, created a latent ambiguity. 2. That the words, " with ˙the buildings and appurtenances thereon standing," were sufficient of themselves to show that line B was intended by the will as *Mrs. Burrows'* northern boundary. 3. That the declarations of the testator were properly admitted in evidence to explain the latent ambiguity. Wigram on Wills; Lord DENMAN in *Doe dem. Allan v. Allan*, 12 Ad. & El., 451; *Thomas v. Thomas*, 6 Term, 671; *Hodgson v. Hodgson*, 2 Vern., 593; *Doe dem. Westlake v. Westlake*, 4 Barn. & Ald., 57; *Selwood v. Mildmay*, 3 Ves. Jr., 306; *Beaumont v. Fell*, 2 P. Wms., 140; *Doe dem. Morgan v. Morgan*, 1 Cromp. & M., 235; *Grant v. Grant*, 39 L. J. Rep., N. S., 140 (discussed in 8 Am. R., 672); *Hill v. Felton*, 47 Ga., 455 (15 Am. R., 643); *Townsend v. Downer*, 23 Vt., 225; *Asylum v. Emmons*, 3 Bradf., 144; *Woods v. Moore*, 4 Sandf., 579. Wherever proof of surrounding facts and circumstances is admissible to explain a written instrument, declarations of the party, made at the time of executing the instrument, cannot be excluded. *Ganson v. Madigan*, 15 Wis., 144.

LYON, J.   The case turns upon the construction of certain clauses in the will of James Sowle.   The plaintiff claims that the line B on the plat, south of the small barn, is the north line of the lands devised to the defendant *Mrs. Burrows*, and that the land devised to the widow of the testator for life, with remainder to the children of the testator, includes both tracts, containing respectively 14 $\frac{7}{12}$ acres and 6$\frac{1}{8}$ acres.   The former tract extends to the west line of the homestead lot.

The defendants claim that the line A on the plat is the north line of the land devised to *Mrs. Burrows*, and that the only land affected by the devise to the widow is the 6$\frac{1}{8}$ acres lying north of line A.   On the trial the defendants offered the plaintiff a judgment for the recovery of an undivided one-fourth of the 6$\frac{1}{8}$ acres.

It will be seen, therefore, that the controversy in this action is confined to the 14$\frac{7}{12}$ acres, and depends entirely upon the solution of the question whether line A or line B is the north line of the land devised to *Mrs. Burrows*.

The record contains a copy of the last will of James Sowle, which is evidently intended to be a *fac simile* of the original, in which the devise to the defendant *Mrs. Burrows* appears as follows:   "I will to Mary ᴀ Burrows the homestead from Burdick's line south to the north to the barn ᴀ yard, thence east to Hutson's line."

Looking at the plat of the testator's homestead (so called), unaided by any other testimony, we find two barns upon it, designated respectively as the "large barn" and the "small barn."   We also find an enclosure adjoining the large barn on the east, south and west, and another enclosure, apparently of about the same size, adjoining the small barn on the east and south.   Either of these enclosures may aptly be designated as a yard or barn-yard; and the testator manifestly referred to one or the other of them, as such, in the devise to *Mrs. Bur-rows*.   The area of the two enclosures being about equal, the adjective "large" applies as well to one of them as the other.

Considering the will alone, there is no ambiguity in the

terms of the devise to *Mrs. Burrows.* Her north line is plainly located at the south line of the large yard or barn-yard, and from thence east to Hutson's line. But when we look for her line, we find two lines corresponding with the description in the will. Here we have an ambiguity, not in the will, but produced by extraneous circumstances. This is a latent ambiguity.

That such an ambiguity may be removed by proof of extraneous facts, is too well settled to be questioned or doubted.

The rule is thus stated by Sir James Wigram in his admirable treatise on extrinsic evidence in aid of the interpretation of wills: "Where the object of a testator's bounty, or the subject of disposition (i. e., *person* or *thing* intended), is described in terms which are applicable indifferently to more than one *person* or *thing*, evidence is admissible to prove which of the persons or things so described was intended by the testator." (O'Hara's 2 Am. ed., 188.) The principle of this rule has frequently been asserted and applied by this court. *Ganson v. Madigan,* 15 Wis., 144; *Prentiss v. Brewer,* 17 id., 635; *Rockwell v. Ins. Co.,* 21 id., 548; *Sydnor v. Palmer,* 29 id., 226; *Strohn v. Ins. Co.,* 33 id., 648; *Att'y Gen. v. Conklin,* 34 id., 21; *Lyman v. Babcock,* 40 id., 503.

Applied to this case, the rule does not go to the extent of admitting extrinsic evidence to contradict or change the terms of the will, but only to identify the land which the testator devised. Whether such evidence establishes line A or line B as the true line, full effect will be given to the will as it is written. The admission of such evidence is no encroachment upon the rule (to sustain which numerous cases were cited), that, "in general, parol evidence of the *intention* of the testator is inadmissible for the purpose of explaining, contradicting or adding to the contents of the will; but its language must be interpreted according to its terms." In most of the cases cited to this rule, the rejected testimony was offered for the purpose of varying or contradicting written instruments, to supply omissions or correct mistakes therein, or to explain patent ambiguities. In many of them, the com-

petency of such evidence to explain latent ambiguities is expressly affirmed.

The learned circuit judge admitted proof of the declarations of the testator, made at the time he executed his will, to the effect that in the devise to *Mrs. Burrows* he intended the small barn. It is claimed by counsel for the defendants that this was error, and he read cases which he claims hold that the testimony was not competent. The case mainly relied upon to sustain this position is that of *Ryerss v. Wheeler*, 22 Wend., 148. We think that the case does not hold the doctrine contended for. The testator devised his "back lands," *eo nomine*, and the question was whether evidence of his declarations designating those lands was competent. It does not appear in the case when the declarations were made. The evidence was held admissible. Mr. Justice Cowen, delivering the opinion of the court, said: "The form of one of the objections at the trial seems to suppose that the testimony came within those cases which refuse the testator's declarations intended by him directly to explain the words of his will; and I agree that such declarations, especially if they were made at the time of framing the will, are not admissible." This is the portion of the opinion relied upon. But the remark quoted has reference to a case where the evidence is offered *to explain the words of the will*, and not to a case like this where the words are unambiguous, and where the evidence is offered to ascertain *the thing* to which the words relate. After citing many cases in which proof of such declarations was admitted (none of which exclude those made at the execution of the will) the learned judge proceeded to say: "So much for the declarations of the testator. They are clearly receivable as giving either a name or character to the devisee or the property devised; and that, too, as appears by the cases, whether such declarations be made before or after the will was executed." The case is authority for the admission of the declarations of the testator in a case like this, if made before or after the execution of the will, and it falls far short of being authority against receiving his declarations made at the time of its execution.

Wigram, in his treatise before referred to, states the rule to be that where parol evidence of the declarations of the testator are admissible, it is immaterial whether the declarations were prior, contemporaneous with or subsequent to the making of the will, provided they relate to the intention he had at the time of making the will. (p. 252.) See also 1 Redf. on Wills, (4th ed.), 502, 507, 540. In *Ganson v. Madigan*, 15 Wis., 144, Dixon, C. J., discussing this question, says: "If the evidence of surrounding facts and circumstances is admitted to explain the sense in which the words were used, certainly proof of the declarations of the parties, made at the time, of their understanding of them, ought not to be excluded. 2 C., M. & R., 422; 42 Maine, 204; 13 Pick., 261. Such declarations, if satisfactorily established, would seem to be stronger and more conclusive evidence of the intention of the parties than proof of facts and circumstances, since they come more nearly to direct evidence than any to be obtained, whilst the other is but circumstantial." (p. 154.) We are satisfied that the rule as here stated is supported, not only by the great weight of authority, but by the stronger and better reasons. We therefore adopt it as the correct rule, and hold that the evidence of the declarations of the testator, made when he executed the will, was properly received.

This brings us to the question whether the evidence sustains the finding of the learned circuit judge, that line B, on the plat, is the north line of the land devised to *Mrs. Burrows.* It appears by the proofs, that the testator usually spoke of enclosure 4, adjoining the large barn, as the "large yard" or "large barn-yard," but that he sometimes called it the "barnyard" or "front yard." Enclosure 5, adjoining the small barn, he usually referred to as the "calf pasture" or "hog pasture," but he sometimes spoke of that also as the "large yard." If that were the only testimony in the case bearing upon the question, perhaps there would be little difficulty in holding that the testator intended enclosure 4 by the term "barn large yard" in the devise to *Mrs. Burrows*, and hence that line A is her north line. It might readily be pre-

sumed (in the absence of other evidence) that he used the term " large yard " in his will in the sense in which he ordinarily used it in conversation when speaking of enclosure 4 on the plat.

But other facts are proved which tend strongly in the opposite direction. The testator himself wrote the first four paragraphs of his will a year or more before the will was executed. A few days before his death, and on the day he executed it, he sent for a neighbor, Mr. Rogers, to aid him in completing his will. He gave Mr. Rogers the portion of the instrument which he had previously written, and Mr. Rogers read it to him at his request. Mr. Rogers then asked him what he meant or intended by the phrase " barn large yard " in the devise to *Mrs. Burrows.* The testator replied, " the little white barn." The small barn, or some portion of it, had once been painted white, and answered the description of " the little white barn." Mr. Rogers testified that the testator raised his hand when he made the above reply; and another witness, Mrs. Blaisdell, testified that when he answered " the litte white barn " to Mr. Rogers' question, he pointed towards the small barn. The testator then gave Mr. Rogers directions for drawing the balance of his will. Mr. Rogers drew it pursuant to such directions, and read it over to the testator, who thereupon executed it.

That the testator then and there designated the small barn as the one adjacent to the large yard or large barn-yard mentioned in the devise to *Mrs. Burrows,* we cannot doubt. This is a very important fact tending to sustain the finding of the circuit judge. But this is not all. The devise to the widow of the testator bounds the lands devised to her on the north by land of D. D. Sowle and the Lima road. This description evidently refers to the land devised to D. D. Sowle in the first paragraph of the will. The easterly line of that land is in fact a northeast and southwest line, but the testator described it in his will as a north and south line. It is described therein by the words " thence on the rail fence *north* to the road." Considering it, as the testator did, a north and south line, the bound-

aries of the land devised to the widow can only be satisfied by locating her west line west of the southwest corner of the 6⅓ acres. That would be necessary in order to locate any of her land south of lands of D. D. Sowle. If her west line is located west of that corner it must necessarily be located on the west line of the homestead lot, for the will designates no intermediate line.

But a more significant fact than that just mentioned is, that the testator devised to his wife the lands described in the 5th paragraph of the will, " with the buildings and appurtenances thereon standing." Now if line A is her south line, she gets no buildings whatever; but if B is her south line, she takes the dwelling house in which she and her husband lived many years, and in which he died, together with the small barn and other buildings appurtenant to the homestead. Thus by adopting B as her south line, and in no other way, can the particulars of the devise to her be satisfied.

The failure of the testator expressly to bound the land devised to *Mrs. Burrows* on the north by the land devised to D. D. Sowle, especially after he had given the boundaries of the latter tract with much particularity, is not without significance. Had he intended that *Mrs. Burrows'* land should extend north to that of D. D. Sowle, it is a reasonable presumption that he would have expressly bounded her land on the north by the land devised to D. D. Sowle, as he did in the devise to his wife. That would have been the easier and more natural description. This is a circumstance, however, of less significance than those first mentioned.

That there are other facts and circumstances in the case, not here specially mentioned, which tend to sustain the defendant's theory of the case, is freely conceded. But those of the opposite tendency, especially the declaration of the testator when he executed the will, and the devise of land to his wife " with the buildings and appurtenances standing thereon," are too significant and weighty to permit us to hold that the circuit judge decided against the preponderance of proof. Indeed, we think the evidence supports the finding that line B is

the south line of the land devised to the widow of the testator.

The record discloses some other exceptions on behalf of the defendants, but they do not seem to be of sufficient importance to require special notice.

*By the Court.* — The judgment of the circuit court is affirmed.

RYAN, C. J., took no part.