Messer vs. Oestreich.

52 684
76 670
52 684
79 62
52 684
80 325
52 684
90 205
52 684
101 487
52 684
109 541

## MESSER VS. OESTREICH.

*September 2 — September 27, 1881.*

DEEDS. *(1) Form of warranty deed. (2) Evidence for construction of deed. (3, 4) Uncertainty in description: Practical construction by parties: Estoppel of grantor. (5) Breach of covenant of seizin, what constitutes. (6) Damages for such breach. (7) Damages for breach as to a part only.*

1. A deed executed since the revision of 1878 in the form prescribed for a warranty deed by sec. 2208, R. S., must be regarded as containing the covenants named in that section.

2. Where the description, in a deed, of the land conveyed, is otherwise uncertain, evidence will be admitted of the state of the property when the deed was executed, to aid in its construction.

3. Where a deed purports to convey a strip of land of a certain width along a line already located, but without prescribing the lateral boundaries or designating the particular portion of the strip traversed by such line, if the grantee thereupon goes into possession under such deed, and designates the lateral boundaries by substantial fences, and continues in the exclusive possession for many years with the acquiescence and consent of the grantor, this is a practical construction of the deed, binding upon the parties and those claiming under them.

4. It seems that such a deed, with full covenants of warranty, for a valuable consideration paid, would be valid as a covenant; and, if executed to a railroad company, would authorize it to appropriate such a strip of land, of the width named, along the line already located, as might be necessary to the construction of its contemplated road; and that, after such actual appropriation of the land, the grantor would be *estopped* from denying that he had conveyed it.

5. A prior valid deed to a railroad company and its assigns, of a strip of land along the line of its railroad for the uses and purposes of said company, is a breach of the covenant of seizin in a subsequent deed, by the same grantor to a third person, of the parcel of land which includes such strip, although the company is in occupancy of the strip for the purposes of a railroad when such subsequent deed is executed. *Kutz v. McCune*, 22 Wis., 598, and *Smith v. Hughes*, 50 Wis., 620, distinguished.

6. The railroad company, under such deed, has not a mere easement in the land, but the absolute title, subject at most to forfeiture for non-user or misuser; and as the value of such possible forfeiture is not susceptible of proof, *it seems* that the amount to be deducted therefor from what would

otherwise be the measure of damages for the breach of the covenant of seizin in the second deed, would be merely nominal.

7. When the title fails to only a part of the land conveyed, the grantee may recover in an action on the covenants of seizin and right to convey (or upon an agreement to convey), such a proportion of the whole consideration paid, as the value of the part to which the title fails bore to the whole purchase price at the time of the purchase, with interest thereon during the time he has been deprived of the use of such part, not exceeding six years.

APPEAL from the Circuit Court for *Jefferson* County.

Action to recover damages for an alleged breach of the covenant of seizin in a deed of fifty-three acres of land, executed by the defendant and his wife to the plaintiff, September 8, 1879, in consideration of $2,925, paid by the plaintiff to the defendant, in pursuance of a contract in writing made by the parties March 30, 1872, by which the defendant gave to the plaintiff possession of the premises, and covenanted and agreed that upon payment of said consideration he would cause to be executed and delivered to the plaintiff a good and sufficient deed, in fee simple, of the premises, free and clear of all legal liens and incumbrances except the taxes thereafter assessed. The deed is in the form prescribed by section 2208, R. S., for a "warranty deed." The particular breach relied upon is a deed duly executed, acknowledged and delivered by the defendant's grantors, Carl Oestreich and his wife, July 28, 1853, wherein and whereby they, in consideration of $40, purported to convey to the Milwaukee & Watertown Railroad Company, its heirs and assigns, forever, "a strip of land, five rods in width, for the uses and purposes of the said railroad company, along the line of their [its] railroad as at present located, across or through the " fifty-three acres of land in question. This deed to the railroad company was a warranty deed with full covenants, and was recorded August 29, 1853.

From a judgment in favor of the plaintiff, the defendant appealed.

*Warham Parks*, for the appellant:

1. To save the grantor in a warranty deed from an action on his covenants, it is not necessary to except or reserve, in the deed, lands included therein used for highway or railway purposes, where the easement is obvious and notorious. *Kutz v. Mc-Cune*, 22 Wis., 628; *Pomeroy v. C. & M. R. R. Co.*, 25 id., 641; *Sabine v. Johnson*, 35 id., 201; *Smith v. Hughes*, 50 id., 626. 2. The deed to the railroad company conveyed no interest, because there was an "incurable uncertainty, amounting to a patent ambiguity," in the description of the premises. *Williams v. W. U. R'y Co.*, 50 Wis., 71. The descriptions in the deed here in question and that pronounced invalid in the case just cited, are identical. "*Ambiguitas patens* is never holpen by averment." 1 Greenl. Ev. (Redf. ed.), §§ 297–300; Bacon's Elm., Rule 23. "If the estate cannot be ascertained by the description in the grant, the deed fails altogether." 3 Washb. R. P., *629; *Jackson v. Rosevelt*, 13 Johns., 97; *Jackson v. Delancy*, id., 537; *Jackson v. Clark*, 7 id., 217; *Lawson v. Mead*, Hill & Den., 158; *Clemens v. Rannells*, 34 Mo., 579. 3. The court erred in its instructions as to the measure of damages, and in refusing to permit the defendant to show the value of the strip of land five rods wide, at the date of the deed to plaintiff, "subject to the right of the railroad company to run over it and use it as long as it should see fit." Compensation will be given only for the amount of the actual loss; the damages must be made to correspond with the real injuries sustained. 1 Sedgw. on Dam. (7th ed.), 40, 343; *Brandt v. Foster*, 5 Iowa, 287; *Griffin v. Reynolds*, 17 How., 610. The court should have submitted to the jury the question whether the plaintiff, before he purchased these lands, knew that the railroad track went through them. There is positive testimony that he did know that fact, and no positive testimony to the contrary. In *Smith v. Hughes*, 50 Wis., 627, this court holds that such knowledge must be presumed; and in *Kutz v. McCune*, 22 Wis., 631, it declares

the " strong natural presumption " to be " that the parties sell on the one hand and buy on the other the property in its actual physical condition, and subject to such rights, either in favor of the vendor or others, as that physical condition obviously indicates, without any exceptions or reservations concerning them in the deed." But if plaintiff took his deed subject to a right of user, or easement, of the railroad company, and if the company had in fact the fee of the strip, and this last fact was a breach of defendant's covenants, the real damages were only the difference between the value of the whole tract conveyed to plaintiff, subject to an easement in the company, and its value with the fee of the five-rod strip vested in the company. And it would seem that the difference between these values was merely nominal. Plaintiff has not yet felt the pressure of the railroad title, other than the user. 4. Counsel further suggested that while the deed to the railroad, if valid, conveyed the fee in form, still the rights thereby acquired were only in the nature of an easement in perpetuity; that in general it is for the legislature to decide what shall become of lands thus granted by deed to railroad companies, in case of an abandonment by such companies (*Ford v. Railroad Co.*, 14 Wis., 617; *Att'y Gen. v. Railway Co.*, 36 id., 466); that the words in the grant in this case, " for the uses and purposes of said railroad company," amount to a condition subsequent (*Horner v. Railway Co.*, 38 Wis., 165); and that in case of a reversion the land would go to plaintiff as defendant's grantee.

*Harlow Pease*, for the respondent:

1. The railroad company has not a mere easement in the land occupied by it, but owns the fee. The charter under which the Milwaukee & Watertown Railroad Co. took the deed of said land, expressly authorized it not only to purchase lands, but to " sell and convey the same when they shall no longer be needed for railroad purposes." It also provides that the title to all lands acquired either by purchase or by condemnation shall vest in fee simple in said company. Laws of

1851, ch. 176, secs. 11, 13, 23.  2. The measure of damages as between vendor and purchaser, upon a breach of the covenant of seizin, is the value of the land at the time of the sale, limited by the consideration money.  Rawle on Cov., 4th ed., 235–6 and cases cited; Sedgw. on Dam., 3d ed., *175–6.  Interest for six years is to be added to the consideration money.  *Rich v. Johnson*, 1 Chand., 19; *Noonan v. Ilsley*, 21 Wis., 138.

CASSODAY, J.  The deed from the appellant to the respondent is in the form prescribed by section 2208, R. S., for a "warranty deed."  That section provides that such deed shall have the effect of a conveyance in fee simple to the grantee, his heirs and assigns, of the premises therein named, together with all the appurtenances, rights and privileges thereto belonging, with a covenant from the grantor, his heirs and personal representatives, that he is lawfully seized of the premises and has a good right to convey the same; that he guaranties the grantee, his heirs and assigns, in the quiet possession thereof; that the same are free from all incumbrances; and that the grantor, his heirs and personal representatives, will forever warrant and defend the title and possession thereof in the grantee, his heirs and assigns, against all lawful claims whatsoever.  The deed must therefore be regarded as a warranty deed containing the covenants named.  It is urged that there was no breach of the covenant of seizin, nor of the contract, on account of the deed previously given to the railroad company, for the reason that the description therein is void for uncertainty; and *Williams v. Western Union Railway Co.*, 50 Wis., 71, is relied upon in support of that position.  That was an action of ejectment.  It is true, the description in that deed was substantially like the one we are considering.  But here it is admitted in the answer that at the time of making the contract the railroad company occupied a strip of land five rods wide through the land in question for track purposes, and that the same "is the part of said premises alleged to be

held and owned by said railway, and the possession and use of which by it, to the exclusion of the plaintiff, is the cause of this action; that said track strikes the said land on the south line thereof, and runs diagonally across the same in a north-west direction, leaving a part of said premises on each side thereof; that at said time said track was fenced by a board fence, at least four feet high, on both sides thereof," and " that previous to the making of the contract . . . the plaintiff came upon the said premises . . . for the purpose . . . of examining the said premises with a view to purchase the same," and that the plaintiff then "took notice of all the highways and the railroad track which ran through" said premises; and " that said strip of land so used had at the time above mentioned been in constant use for said purposes, by one or the other of said railroad companies, for nearly twenty years." With these admissions in the answer, the defendant was not in a position to claim that the deed to the railroad company was "immaterial." On the contrary, they were to the effect that nearly twenty years prior to the contract with the plaintiff the railway company had located the track and the fences each side of it. From these admissions it may well be inferred that the deed was not given to the railway company until after such location of the track and fences, and hence the significance of the words " *as at present located.*"

Deeds are to be construed with reference to the actual right-ful state of the property at the time of their execution. *Dunklee v. Railroad Co.*, 24 N. H., 489; *Richardson v. Palmer*, 38 N. H., 212; *Lane v. Thompson*, 43 N. H., 320; *Bell v. Woodward*, 46 N. H., 332; *Abbott v. Abbott*, 51 Me., 575; *Stanley v. Green*, 12 Cal., 148; *Tallman v. Franklin*, 14 N. Y., 589; *Ryerss v. Wheeler*, 22 Wend., 148; *Morgan v. Burrows*, 45 Wis., 211; *Ganson v. Madigan*, 15 Wis., 144. For this purpose extrinsic evidence is often admitted in order to place the court in the position of the parties at the time of making the deed, and thus enable the court to intelligently

interpret the language used. The law will not declare a deed void for uncertainty when the light which contemporaneous facts and circumstances furnish renders the description definite and certain. It is for the court to construe a deed, but when so construed it is the duty of the jury to ascertain from the evidence whether the premises in question are within the description. These statements seem to be abundantly sustained by the authorities above cited. Here the answer admits that the premises in question were within the description, and hence there was no necessity of evidence.

If the track and fences each side of it had actually been built when the deed to the railway was executed, then it is very evident that the "strip" thereby intended to be conveyed was the strip which had been so fenced out. This case, therefore is clearly distinguishable from *Williams v. Western Union Railway Co.* But assuming that the track and fences were not built until after the deed to the railway company, yet it is admitted in the answer that they had been built and occupied by the company for railway purposes for nearly twenty years prior to the contract, and with the apparent acquiescence and consent of the defendant and his grantor. Besides, the description recites that the strip was "along the line of their [the company's] railroad as at present [then] located," etc. This clearly indicates that the line of the road had been actually located at the time of making the deed which purported to convey a strip five rods in width along that line. The only uncertainty in the description is the failure to state lateral boundaries to the strip, or whether the middle or any other part of the strip should be upon the line so located. As stated, the answer, in effect, admits that the railway company had, nearly twenty years prior to the contract, given a practical construction to the deed by building the track and a substantial fence each side of it, and occupying the strip between the fences during that time for railroad purposes, with the apparent acquiescence and consent of the owner of the land. By such actual appro-

priation for so long a period, with the consent of the owner of the land, the uncertainty in the description would seem to be obviated.

In *Hastings v. Stark*, 36 Cal., 122, it was held that, "if there be such uncertainty in the calls of a deed that either one of two or more objects will answer it, so that the line will run in two or more positions, and still harmonize with the other calls of the deed, the parties to the deed may adopt either line, and when so established it concludes both parties." In *The Georgia Railroad v. Hart*, 60 Ga., 550, it was held that "the uncertainty of a deed as to what precise part or parts of a large tract might be appropriated as sites for buildings, may be aided by actual appropriation and long enjoyment."

In *Crocker v. Crocker*, 5 Hun, 587, in regard to a reservation otherwise uncertain, it was held that "the parties interested could locate it by agreement, or by acts, conduct and declarations indicating a practical location, accompanied by user from and after the date of the creation of the right of way." See also *Collins v. Vandever*, 1 Clarke (Iowa), 573; *Barlow v. Railroad Co.*, 29 Iowa, 276; *French v. Pearce*, 8 Conn., 439.

In *Stone v. Clark*, 1 Metc., 381, WILDE, J., giving the opinion of the court, said: "Where the language is doubtful, especially in the description of the land conveyed, there evidence of the practical construction by the parties is admissible to explain and remove the doubt." The same language is found in 1 Greenl. Ev., § 293, and quoted approvingly in *Bell v. Woodward*, 46 N. H., 332.

In *Livingston v. Ten Broeck*, 16 Johns., 24, SPENCER, J., said: "In the location of grants, when the words are equivocal, possession, which stands on the same footing as usage, has always been resorted to in explanation of the intent of the parties, and to give a construction to the location of the grant."

We conclude, therefore, that where a deed purports to convey a strip of land of a certain width along a line already

located, but without prescribing the lateral boundaries, or designating the particular portion of the strip traversed by such line, and the grantee thereupon goes into possession under such deed, and designates lateral boundaries thereof by substantial fences, and continues in the exclusive possession thereof for many years with the acquiescence and consent of the original owner, the parties must thereby be deemed to have given a practical construction to such deed, which is binding upon them and those claiming under them.

There is another reason why the deed to the railway company would seem to be binding upon the parties and those claiming under them. It was a warranty deed, with full covenants, reciting a consideration of $40 as having been paid therefor by the railway company. If, therefore, the deed did not operate as a conveyance in fee of a fixed and definite strip of land five rods wide along the line which had been previously located, by reason of not designating the precise part of the strip traversed by such line, yet there would seem to be no good reason why such covenants in the deed, based as they were upon a valuable consideration paid, should not be binding upon the grantor and those claiming under him, and authorize the railway company and its assigns to appropriate such a strip of land five rods wide, along the line which had been so located, as might be necessary for the construction of the contemplated railroad. In *Pollard v. Maddox*, 28 Ala., 321, such covenants in a deed, purporting to convey "so much of any part of our lands as may be necessary in the construction of said railroad," was held, in a well-written opinion by CHILTON, C. J., not void for uncertainty, but binding as a covenant, notwithstanding the line of the road had not been located when the deed was made. Here the line of the road was located before the deed to the company, and hence there is much stronger reason for holding the covenants binding than in *Pollard v. Maddox*. It is also obvious that when such covenants were satisfied by the actual appropriation of the strip of

land, then the grantor became estopped from alleging or proving that he had not conveyed the same.

We must, for the reasons given, treat the deed as conveying to the railway company and its assigns at least a conditional fee, as well as the immediate possession and right to use the strip of land in question.

It is urged upon the part of the appellant that, because the railway company had constructed its track and fenced out the strip of land prior to the contract with the respondent, therefore there was no breach of the covenant of seizin in the deed subsequently given, nor any breach of the agreement to convey contained in the contract, for the reason that the grantee took subject to the easement; and several cases in this court are cited in support of that position. But in none of the cases cited was there any outstanding title created by the deed of the covenantor or any of his grantors. The case of a mere easement, as in *Kutz v. McCune*, 22 Wis., 628, by flowage, or a mere unlawful intrusion upon land, or the mere taking of the same by the right of eminent domain, as in *Smith v. Hughes*, 50 Wis., 620, and other cases cited by counsel, are clearly distinguishable from the case here presented.

It follows that the covenant of seizin in the deed to the respondent was broken in its inception, as to the strip of land in question, and the failure to convey the same as prescribed in the contract was a breach of that agreement.

Counsel insist that the court should have instructed the jury, as requested, that the railway company took nothing but an easement, and that the proper measure of damages was the value of the remainder or reversion of the strip, subject to the user of the railroad company as a right of way over the same. But since the railway took by the deed a fee of the strip, with the right to convey the same, it is evident that the railway company held the absolute title and possession, as well as the right to use; and the most that can be claimed is, that such title was subject to forfeiture for *non-user* or *misuser*. As

such forfeiture may never occur, but at most exists merely as a possibility, it would seem to be extremely difficult, if not impossible, to estimate its value. As substantial damages must always be based upon evidence, and as the value of the possible forfeiture mentioned is not susceptible of proof, it would seem that the amount to be deducted from what would be the measure of damage in case there had been an absolute failure of title, was merely nominal. But there was no re-quest to so instruct the jury. On the contrary, the instructions asked for were wholly or in part upon the theory that the fee of the strip was in the respondent instead of the railway company. It is true that the first part of the second instruction asked is on the theory that the fee was in the railway company; but the latter part of the same instruction could only be justified upon the theory that the fee was in the plaintiff.

The court instructed the jury, in effect, that the respondent was entitled to recover whatever they found to be the value of the strip of land in question on the 8th of September, 1879, and interest thereon at seven per cent. from that date to the time of trial. No reference is made in the charge to the consideration paid for the whole fifty-three acres, nor to the value of the same; but the sole question submitted to the jury was the actual value of the isolated strip held by the railway company, September 8, 1879, and interest thereon to the time of trial. Is the rule thus stated correct? The breach consists in the appellant's not being seized, and not having the right to convey, at the time of the contract of purchase, March 30, 1872. In *Flureau v. Thornhill*, 2 W. Black., 1078, BLACK-STONE, J., said: "These contracts are merely upon condition, frequently expressed, but always implied, that the vendor has a good title. If he has not, the return of the deposit, with interest and costs, is all that can be expected."

In *Staats v. Ten Eyck*, 3 Caines, 111, it was held that, "under a covenant of ownership, seizin, power to sell, and for

peaceable enjoyment, if the vendee be evicted he can recover only the value of the land at the time of the purchase, with interest for so long a time as he pays mesne profits, and the costs of ejectment, that may be brought against him, but not those of the action for mesne profits." In that case the consideration paid was taken as the value of the land, and KENT, C. J., in his opinion, says that "the interest ought to be calculated on the consideration sum." Page 115. That case was followed and approved in *Pitcher v. Livingston*, 4 Johns., 1; *Caulkins v. Harris*, 9 Johns., 324; *Bennet v. Jenkins*, 13 Johns., 50. See also *Cox v. Henry*, 32 Pa. St., 18; *Willson v. Willson*, 25 N. H., 229. In *Pitcher v. Livingston* the value was restricted to the amount of the consideration paid. In *Caulkins v. Harris* the grantee held possession for fifteen years before he was evicted, but he was only allowed interest on the consideration paid for six years, because that was the limit of the time for which he was answerable for *mesne* profits; and the same rule was adopted in *Bennet v. Jenkins* and *Cox v. Henry*.

The rule that the recovery shall not exceed the amount of the consideration paid, and interest, has been extended to covenants against liens and incumbrances in several of the states. *Grant v. Tallman*, 20 N. Y., 191; *Dimmick v. Lockwood*, 10 Wend., 142; *Cox v. Henry*, 32 Pa. St., 18; *Willson v. Willson*, 25 N. H., 229; *Foote v. Burnet*, 10 Ohio, 317. The rule thus stated, and the cases cited in support of it, are in harmony with the decisions of this court. *Rich v. Johnson*, 2 Pinney, 88; *Blossom v. Knox*, 3 Pinney, 262; *Pillsbury v. Mitchell*, 5 Wis., 17; *Noonan v. Ilsley*, 21 Wis., 140; *Nichol v. Alexander*, 28 Wis., 118. But where, as in this case, there is a failure of title to only a fractional portion of the land purchased, is the same rule of damages applicable?

In *Morris v. Phelps*, 5 Johns., 49, the title to one-sixth of the two tracts described in one deed failed, and the title to five-sixths of the tract described in another deed failed, and

KENT, C. J., giving the opinion of the court, makes this statement, and cites from the Year Books and Coke in support of it: "The plaintiff was entitled to recover damages only in proportion to the extent of the defect of title. This is an old and well-settled rule of damages, that if one be bound to warrant, he warrants the entirety; but he shall not render in value but for that which was lost." He concludes thus: "There is, then, no law or reason why the plaintiff should recover more than one-sixth of the consideration money and interest for the two tracts mentioned in the first count, and five-sixths of the consideration money and interest for the tract contained in the second count." To the same effect are *Guthrie v. Pugsley,* 12 Johns., 126; *Wager v. Schuyler,* 1 Wend., 553; *Dimmick v. Lockwood,* 10 Wend., 142; *Cornell v. Jackson,* 3 Cush., 506; *Partridge v. Hatch,* 18 N. H., 494; *Ela v. Card,* 2 N. H., 175; *Dickens v. Shepperd,* 3 Murphy, L. & E., 526.

In the light of these authorities, and others which might be cited, and in the absence of fraud, we conclude that where the title fails to only a part of the land conveyed, the grantee may recover in an action on the covenants of seizin and right to convey, or upon an agreement to convey, such a fractional part of the whole consideration paid as the value at the time of the purchase of the piece to which the title fails bears to the whole purchase price, and interest thereon during the time he has been deprived of the use of such fractional part, but not exceeding six years.

In view of the contract, we think the value should be confined to the date of purchase, March 30, 1872. Here the respondent never got possession of the strip of land in question, and hence is entitled to interest for the six years prior to the commencement of the action. The counsel for the respondent concedes that the damages should have been " the value of the land at the time of the sale, limited by the consideration money," but insists that the judgment should be sustained, because " the verdict is for less than the consid-

Messer vs. Oestreich.

eration money and interest." As a reversal can be of no substantial benefit to the appellant, we have carefully looked through the case with the view, if practicable, of sustaining the judgment on that ground, but find it is impossible to do so without assuming the functions of the jury.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded for a new trial.