## WHITNEY vs. ROBINSON and others.

*October 20 — November 3, 1881.*

DEED: EVIDENCE: NOTICE: ESTOPPEL. *(1) Evidence to aid construction of deed. (2) Practical construction by parties. (3) Notice by occupation: who bound by it. (4) Grantor estopped to deny corporate character of grantee.*

1. A deed with a description otherwise uncertain should be construed with reference to the actual rightful state of the property at the time of its execution; and, extrinsic evidence of that state is admissible to aid in the construction.
2. Where the grantee in such a deed goes into possession of land under it, and fences the same, and makes valuable improvements thereon, with the knowledge and acquiescence of the grantor, this is a practical construction of the deed, binding on the parties and those claiming under them.

3. Where one takes a mortgage including by its terms a parcel of land fenced off from the remainder of the mortgaged premises, and upon which a third party has erected and is maintaining and occupying a valuable building, neither he nor a purchaser on foreclosure of his mortgage acquires any greater rights against such third party than the mortgagor has.

4. One who executes a deed (in this case a lease) to a body claiming to be a corporation, is estopped from denying its corporate character to defeat the instrument.

APPEAL from the Circuit Court for *Green Lake* County.

Ejectment, for land in said county, described as commencing at the southeast corner of the W. ½ of the S. W. ¼ of section 14 in township 14 north, of range 13 east, and running thence west 11½ rods; thence north 10 rods; thence east 11½ rods; and thence south 10 rods to the place of beginning, containing 115 square rods of land. The cause was tried by the court without a jury. It was admitted by both parties that in 1863 William M. Butler was the owner in fee of the premises in question. It also appeared that on the 16th of November, 1863, William M. Butler, of Mackford in said county, under his hand and seal and in the presence of two witnesses, who signed their names thereto as such, executed a certain indenture whereby he leased, demised and let unto the trustees of the Methodist Episcopal and Free-Will Baptist Churches of said Mackford, in trust, "a certain parcel of land, for the purpose of erecting a church or meeting-house thereon, beginning at the southeast corner of W. ½, S. W. ¼; running west 11½ rods; thence north 10 rods; thence east 11½ rods; thence south 10 rods to the place of beginning, containing 115 square rods." The deed declares that "the said trustees, in trust for said churches," are "to have the use and control of said piece of land so long as they choose to occupy it for a church or meeting-house, and no longer; the said trustees in trust are to keep up a good fence between said lot and *said Butler's land* so long as they occupy the same; and when said trustees in trust shall cease to occupy said land for the pur-

poses therein mentioned, they shall deliver up to said Butler the use" thereof. The lease was also executed by the defendants *Joshua Soule* and *Thomas Richards*, and also by A. L. Rector and Joseph Day, who appear, from the testimony, to have been trustees at the time. It was alleged in the complaint, and was admitted on the trial for the purposes of the suit, that the defendants were in possession of the premises. Joseph Day testified, in effect, that in 1863 he was one of the trustees of the Free-Will Baptist Church in Mackford; that they procured a lease of Butler, and built a church upon his land; that he and Butler and the other trustees signed the lease; that he was one of the committee to locate the house; that they got of Butler, to build a church upon, *the corner piece of land in the four corners of the road*, about three-fourths of an acre off of Butler's farm, occupied by him, 50, 60, or 100 rods from Butler's house; that they took the lease, and built the church on the piece of land so bargained for with Butler; that one road ran north and south, and the other east and west, and the church was built in the *southwest corner* of the lot; that it was a very nice house, 44x32 feet, and was finished in 1863, and had been well occupied ever since, services being held there nearly every Sabbath by meetings and Sabbath-school classes; that it had been kept occupied all the time by one or the other denomination; and that a high fence was built by the two churches around on the inside of the church lot, but no fence on the outside. Ira Butler, a son of William M. Butler, testified, in effect, that the part of his father's farm on which he resided in 1862 and 1863, and upon which the church stood, was on section 14; that the church was about 100 rods from his father's house, and his father continued to own and occupy the premises until 1878, when he moved away; that his father attended this church frequently, and had knowledge of the occupation of it by both the sets of trustees referred to in the lease; that there had been a fence a part of the time between the church lot

and his father's land, but no road fence; that the road was on two sides of the church lot, and his father's land on the other two sides, with the fence between; that in 1868 or '9 he was acting as one of the trustees of one of the churches named in the lease, and the lease then came into his possession from his predecessor, Moses Sherwood; that he retained the lease, as such trustee, from 1868 or '9 to 1879; and that, at the time of testifying, Sherwood was acting as trustee of the Free-Will Baptist Church. It also appears from the evidence on the part of the plaintiff, that on the 23d of March, 1874, William M. Butler gave a mortgage on his land, including the land in question; that the same was foreclosed; and that the lands covered by the mortgage were conveyed to the plaintiff December 20, 1874, by the sheriff's deed on the foreclosure sale.

From a judgment in favor of the plaintiff, the defendants appealed.

The cause was submitted for the appellant on the brief of *A. Scott Sloan.*

For the respondent there was a brief by *Thompson & Jackson,* and oral argument by *Mr. Thompson.* They contended, among other things, 1. That as the pretended lease did not name either the state, county, town or range in which the land was situate, it was absolutely void on its face. *Tollenson v. Gunderson,* 1 Wis., 113; *Head v. James,* 13 id., 643; *Orton v. Noonan,* 18 id., 447; *Harvey v. Byrnes,* 107 Mass., 518; 4 id., 204; *Larrabee v. Hotchkins,* 58 Me., 412; *Campbell v. Johnson,* 44 Mo., 247; *Bosworth v. Farenholz,* 3 Iowa, 85; *Boyd v. Ellis,* 11 id., 101; 4 Cranch, 167; Bishop on Con., § 581. 2. That as the ambiguity was patent (Bac. Max., Reg. 23; 1 Greenl. Ev., § 297; Bish. on Con., § 581), parol evidence was inadmissible to show what land the grantor intended to convey. *Ganson v. Madigan,* 15 Wis., 153–4, states the exception to this rule, if exception it be; and this is applicable only to words of doubtful signification or double meaning, as "team" in *Ganson v. Madigan,* "freight" in *Peisch v.*

*Dixon*, 1 Mason, 10, "port" in *De Longuemere v. Ins. Co.*, 10 Johns., 120; and it is the same in principle as permitting the explanation of technical words. See *Hall v. Davis*, 36 N. H., 569, quoted in *Ganson v. Madigan*; 2 Parsons on Con., 6th ed., 563; *Campbell v. Johnson*, 44 Mo., 250. Moreover, if we put the writing and the parol evidence together, we have only this description: "Beginning at the S. E. corner of W. ½, S. W. ¼, sec. 14, running west 11½ rods, thence north 10 rods, thence east 11½ rods, thence south 10 rods to the place of beginning, being the corner piece of land in the four corners of the road, one road running east and west and one north and south, about three-quarters of an acre off of William Butler's farm, on land that he occupies, about 100 rods from his house, containing 115 square rods." And this, unaided, does not make a good description.   3. That there were no such corporations or societies in existence as those named in the lease. There must be a person *in esse* to receive a conveyance.   3 Washb. R. P., *567; *Jackson v. Cory*, 8 Johns., 387; *Hornbeck v. Westbrook*, 9 id., 74.   As to the Methodist Episcopal Church, there was no evidence and there is no claim that it had any existence.   As to the Free-Will Baptist Church, the pretended certificate of incorporation put in evidence by the defendants was clearly insufficient.   Counsel further argued, on grounds which need not be stated here, that ch. 97 of 1879 was inapplicable to the case, and, even if applicable, would not be construed to take away property of the plaintiff.   *Jackson v. Cory, supra; Jackson v. Catlin*, 2 Johns., 248; *Catlin v. Jackson*, 8 id., 520.

CASSODAY, J.   The plaintiff's claim to the title of the land in question is based upon the sheriff's deed of December 20, 1879, given on the foreclosure of the mortgage executed by Butler March 23, 1874.   It is conceded that neither of the churches, nor any of their trustees named in the lease given by Butler to them November 16, 1863, were parties to that

foreclosure. This being so, and the fact appearing, as it does, that at the time of the execution of the mortgage there was a building upon the premises in question, in the possession and occupancy of said societies and their trustees, under the lease, as a church, with a fence between those premises and the balance of Butler's land, it becomes very evident that the plaintiff only acquired through such foreclosure such right, title and interest as Butler had at the time of making the mortgage, March 23, 1874. The purpose of that foreclosure was merely to shut out and forever bar and destroy the equity of redemption existing in Butler, and those claiming under him subsequent to the execution of the mortgage. In the language of HARRIS, J., in *Holcomb v. Holcomb*, 2 Barb., 23, "the object of the bill [to foreclose] is to vest in the purchaser under the sale, made by virtue of the decree of foreclosure, the same title which the mortgagor had at the time of the execution of the mortgage." See *Tallman v. Ely*, 6 Wis., 244. But it would have been improper to have made the churches or their trustees parties to that foreclosure, for the simple reason that their occupancy and possession began long prior to the mortgage, and had continued ever since, under a lease executed by Butler ten years prior to the execution of the mortgage. Had they been made parties, such prior right could not have been controverted in such foreclosure suit. *Strobe v. Downer*, 13 Wis., 14; *Pelton v. Farmin*, 18 Wis., 222; *Corning v. Smith*, 6 N. Y., 82; *E. I. S. Bank v. Goldman*, 75 N. Y., 127.

It is claimed that the description in the lease is void for uncertainty, because it fails to state the section on which the land is located, and that it should therefore have been rejected, and no parol evidence admitted in aid of it. But this court has quite recently held that a deed with a description otherwise ambiguous and uncertain should be construed with reference to the actual rightful state of the property at the time of its execution, and that for that purpose extrinsic evidence may be admitted in order to place the court in the position of the par-

ties at the time of making the deed, and thus enable the court
or jury to intelligently interpret the language used.   *Messer v.
Oestreich,* 52 Wis., 684.   Under this rule it was clearly com-
petent to prove the situation of the premises in question, and
the location and description of Butler's land at the time; and
then, if, in the light of such contemporaneous facts and cir-
cumstances, the description in the lease became definite and
certain, it was most certainly proper to admit the same in evi-
dence, if not otherwise incompetent.   Here the grantees
named in the lease went into possession of the land in 1863,
and built a fence between it and the balance of Butler's land,
and constructed thereon a meeting-house or church, and occu-
pied the same as such from that time to the time of the trial;
and by so doing we must hold, within the principles of *Messer
v. Oestreich, supra,* that the parties to the lease must be
deemed to have given a practical construction to such lease,
which is binding upon Butler and those claiming under him.

It is claimed that the lease and all evidence in relation to
the churches should have been rejected, for the reason that
there was no sufficient evidence that either of the churches had
any legal existence.   The only evidence of incorporation, aside
from the acts stated, is a copy of the original record of the
certificate of incorporation of the First Free-Will Baptist
Church of Grand Prairie, town of Mackford, bearing date
April 3, 1862, purporting to be signed by two persons appointed
by a majority of the male persons of full age belonging to
the society, at a meeting thereof March 29, 1862, as appears
of record in the register's office of Green Lake county, and
which copy is certified to by the register of deeds of that
county.   Whether the certificate is sufficient to prove the in-
corporation or not, or whether any defects in it are cured by
chapter 94, Laws of 1879, it seems to be unnecessary to deter-
mine.   In *Franklin v. Twogood,* 18 Iowa, 516, it was held
that " the execution of a mortgage to a corporation is an ad-
mission of its corporate existence, and estops the mortgagor

from denying the same." To the same effect are *Nat. Bank of Fairhaven v. Phœnix W. Co.*, 6 Hun, 71; *Parish v. Wheeler*, 22 N. Y., 494; *Palmer v. Lawrence*, 3 Sandf. S. C., 162; *Dutchess Co. M. v. Davis*, 14 Johns., 238.

In *Den v. Van Houten*, 10 N. J. L., 270, it was held that, "in an action of ejectment brought by the assignee of a mortgagee against a mortgagor, upon a mortgage given to a corporation, it is not necessary to produce the charter of incorporation. The admission by the defendant himself, in the deed of mortgage, is sufficient proof, when uncontradicted, of the existence of the incorporation."

In the *Congregational Society v. Perry*, 6 N. H., 164, it was held that "he who gives a note to a corporation is not to be permitted to deny that there is such a corporation." To the same effect are *Topping v. Bickford*, 4 Allen, 120; *Merchants' Nat. Bank v. Glendon Co.*, 120 Mass., 97; *Huffaker v. Nat. Bank*, 12 Bush, 287; *Vater v. Lewis*, 36 Ind., 288; *John v. F. & M. Bank*, 2 Blackf., 367; *Montgomery R. R. Co. v. Hurst*, 9 Ala., 513; *Jones v. Bank*, 8 B. Mon., 123; *Rector, Church Wardens, etc. v. Lovett*, 1 Hall, Sup. Ct. R., 191. In the last case cited it was held that, "where there has been a body corporate *de facto* for a considerable period of time, claiming at least to be such, and holding and enjoying property as a corporation, it will be presumed that every mere formal requisite to the due creation of the corporation has been complied with." It was further, in effect, held in that case, that one contracting with such church in its corporate name thereby admits the existence of the corporation, and cannot thereafter deny it; and, where suit is brought by the trustees of such church *colore officii*, the defendant cannot object upon the ground that they are not trustees, without showing that proceedings have been instituted against them by the government, and carried on to a judgment of ouster.

In the light of these authorities, we must hold that Butler is in no position to deny that any estate passed by the lease,

on the ground that there were no such corporations in existence as therein named. We must further hold that the plaintiff is in no better position in that regard than Butler. Prior to the execution of the mortgage, the churches, by their respective trustees, relying upon the rights given to them by the lease, went into possession and built a valuable structure, and were occupying the same as a meeting-house or church at the time the mortgage was given. Such occupancy must be regarded as notice to the person taking the mortgage, and all persons claiming under him.

With the view we have taken of the case, it becomes unnecessary to consider the other questions presented. No attempt was made to show that the churches had forfeited the grant contained in the lease by *non-user* or *mis-user*, and until such forfeiture the right to possession and use must remain in the trustees of the respective churches. *Messer v . Oestreich, supra.*

For the reasons given, the judgment of the circuit court must be reversed, and the cause remanded with directions to dismiss the complaint.

