GIFFORD, Appellant, vs. STRAUB, Respondent.

*September 21—October 19, 1920.*

*Brokers: Commissions: Necessity for written contract of employ-*
*ment: Sufficiency of writing: Description of premises: Cer-*
*tainty: Period of agency: Price designated by owner: Excess*
*to belong to broker: Measure of compensation: Performance*
*by broker.*

1. In an action by a real-estate broker to recover a commission for
   the sale of defendant's farm, a written contract which de-
   scribed the premises as "my place" is sufficient, under sec.
   2305*m*, Stats., there being no demurrer to the complaint and
   the evidence showing that defendant owned but one tract of
   land, the farm on which he lived, and that this was the land
   shown to the proposed purchaser and the only land the parties
   had in mind.
2. The writing relied on to establish such a contract need not
   describe the land subject to sale otherwise than by a reference
   therein to some extrinsic fact by means of which the land
   can be known with sufficient certainty.
3. Defendant's written contract to give the broker all he got for
   his place over $11,500 stated the amount of the commission to
   be paid so as to comply with sec. 2305*m*.
4. Under such contract the broker would have performed his part
   of the contract if he produced within the time limit a pur-
   chaser ready and willing to pay the price; he was not re-
   quired to get the money and actually pay it over.
5. The words "Sep. 20—1919 exclusive sail" do not conform to
   the requirement of the statute that the writing express "the
   period during which the agent or broker shall procure a
   buyer," as the parties may have intended that the broker
   have an exclusive right of sale to September 20th and that
   the agency would continue indefinitely thereafter.

APPEAL from a judgment of the circuit court for Pierce
county: GEORGE THOMPSON, Circuit Judge.   *Affirmed.*

*W. G. Haddow* of Ellsworth, for·the appellant.
*F. M. White* of River Falls, for the respondent.

JONES, J.   This is an action to recover commission for services by the plaintiff, a real-estate broker, alleged to have been performed as to selling the farm of defendant.

There was a written memorandum relied on as the contract, in the following language:

"Plum City, Wis., May 20—1919.
"I agree to giv *H. M. Gifford* all he gets for my place over $11,500.   Sep. 20—1919 exclusive sail.
(Signed)            "MILTON STRAUB."

The court submitted the following verdict:

"(1) Did the plaintiff procure a purchaser able, ready, and willing to pay defendant $12,000 for his farm? *A.* Yes.

"(2) If you answer the first question 'Yes,' then answer this: Did the plaintiff notify the defendant that he had procured such a purchaser? *A.* Yes.

"(3) If you answer the first two questions 'Yes,' then answer this: Did the defendant refuse to sell the farm to such purchaser? *A.* No."

Upon this verdict judgment was ordered and rendered for the defendant.

Considerable testimony was received bearing on the issue whether the plaintiff performed his part of the contract, and it was claimed that he did not notify the defendant that he had found a purchaser until the proposed purchaser had bought another farm and for that reason could not·complete the intended purchase.   In view of our conclusions as to the questions of law involved it is unnecessary to set forth the evidence.

The defendant attacked the validity of the written contract on three grounds, namely: (1) that it did not describe the premises to be sold; (2) that it did not state the commission to be paid; (3) that it did not state the period during which the agent should procure a buyer.   To support

these contentions defendant's counsel relied on sec. 2305*m*, Stats., which reads as follows:

"Every contract to pay a commission to a real-estate agent or broker or to any other person for selling or buying real estate shall be void unless such contract or some note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller, be in writing and be subscribed by the person agreeing to pay such commission."

In our opinion the first objection is not well founded. There was no demurrer to the complaint, and the evidence showed that the defendant owned only one tract of land, the eighty acres on which he lived, and that this was the land shown to the proposed purchaser and the only land the parties had in mind. It was objected that oral testimony identifying the land described as "my place" was not admissible for the reason that it was an attempt to contradict the terms of the written instrument, but on well settled rules this objection was not well founded. It has been many times decided in cases arising under the statute of frauds that an indefinite description does not render the contract invalid if by extrinsic evidence the land conveyed can be made certain.

The writing relied on to establish the contract need not describe the land which is subject to sale otherwise than by a reference therein to some extrinsic fact by means of which the land can be known with sufficient certainty. *Washburn v. Fletcher,* 42 Wis. 152; *Messer v. Oestreich,* 52 Wis. 684, 10 N. W. 6; *Whitney v. Robinson,* 53 Wis. 309, 10 N. W. 512; *Docter v. Hellberg,* 65 Wis. 415, 27 N. W. 176; *Singleton v. Hill,* 91 Wis. 51, 64 N. W. 588; *Inglis v. Fohey,* 136 Wis. 28, 116 N. W. 857; *Wis. Cent. R. Co. v. Schug,* 155 Wis. 563, 145 N. W. 177.

It is our conclusion that the amount of the commission to be paid is so stated as to comply with the meaning of the statute. It was argued that according to the terms of the

contract the broker was required to get $11,500 and actually pay it over to the defendant in order to comply with the terms of the memorandum, but we are not inclined to give to the instrument so strict a construction. Under the well settled rule the plaintiff would have performed his part of the contract, if it were a valid one, if he had produced within the time limited a purchaser ready and willing to pay $11,500. If no more could be obtained for the land he would have been entitled to no commission. Any excess above that amount would have belonged to the agent and would have been the measure of his compensation, or, in other words, his commission.

This excess would have been a definite amount ascertainable without any contradiction of the memorandum. The writing itself provided the mode of ascertaining the compensation, and it would be applying too strict a rule to hold that the commission is not expressed. We believe that "the word 'commission,' as used in the statute, was intended to include not merely commissions in the technical sense, but every form of compensation." *Mendles v. Danish,* 74 N. J. Law, 333, 65 Atl. 888.

The only language in the instrument relied on as complying with the language of the statute providing that there must be expressed "the period during which the agent or broker shall procure a purchaser" is in these words: "Sep. 20—1919 exclusive sail." There is some ground for the claim that these words can only mean that there was given the right of exclusive sale until September 20, 1919. On the other hand, the parties might have intended that the right to sell should be exclusive until September 20th, but that the agency would continue beyond that time indefinitely.

We therefore hold that the memorandum of agreement does not conform to the statute for the reason that it fails to state the period during which the agent should procure a buyer. This is a new statute and now comes before this court for the first time for construction. The statute was

doubtless enacted for reasons similar to those which led to the enactment of the statute of frauds. It was to prevent frauds and perjuries. Its enforcement will sometimes protect brokers who have rendered valuable services too little appreciated. More often it will protect owners from unfounded claims. It will tend to prevent the flood of litigation arising out of misunderstandings between well-meaning persons.

We believe that in order to carry out the legislative intent we should hold contracts void which do not substantially comply with the statute. In other words, that the statute means what it says. At the same time we believe that the statute should not be construed so strictly as to prevent persons unskilled in the law from drawing their own contracts, provided these contracts in effect comply with the statute.

*By the Court.*—Judgment affirmed.