Pierson and wife, Respondents, vs. Dorff, Appellant.

*November 8, 1928—February 5, 1929.*

For the appellant there was a brief by *Harry V. Meissner,* attorney, and *Samuel M. Soref,* of counsel, both of Milwaukee, and oral argument by *Mr. Soref.*

*Maurice A. Goldberg* of Milwaukee, for the respondents.

DOERFLER, J. Plaintiffs' counsel first insists that the written contract between the parties does not comply with the requirements of the statute of frauds; that the description is fatally defective, in that it is impossible from the writing itself to ascertain it; furthermore, that, assuming that oral testimony may be admitted as to surrounding facts and cir-

cumstances in order to fix definitely the description of the property, nevertheless such oral testimony as was introduced is of no aid in that respect; and that after such introduction of oral testimony the definiteness and certainty of the description remained as vague and doubtful as ever. When the case was reviewed by the circuit court on the record of the civil court, the learned circuit judge in his opinion agreed with the aforesaid contentions of plaintiffs' counsel, and held that the contract did not meet the calls of the statute of frauds, either as contained in the writing or when supplemented by oral testimony.

In the case of *Harney v. Burhans*, 91 Wis. 348, 351, 64 N. W. 1031, Mr. Justice MARSHALL, in rendering the opinion of the court and in speaking of the subject now under consideration, states: "It must be definite in respect to the intention of the parties, . . . their relation one to the other, who is the seller, who the buyer, the property, the price, and the terms of payment."

In the case of *Inglis v. Fohey*, 136 Wis. 28, 116 N. W. 857, in speaking of the description necessary to meet the requirements of the statute of frauds, it is said:

"The written contract is certainly indefinite in several particulars, especially in respect to the description of the real estate intended to be covered by it. If the court had no further information than that given by the writing on its face, it seems probable that it would be impossible of enforcement because of its indefinite terms. But where parties have attempted to reduce an agreement to writing, and such writing is in some respects indefinite or ambiguous, the contract does not necessarily fail, nor will a party suing upon it be denied relief. If, by aid of evidence showing the situation and surroundings of the parties at the time and their subsequent acts, if any, construing the terms of the writing, the court can with reasonable certainty determine the meaning intended by the parties, the court will not allow the contract to fall, but will construe it in the light of such evidence and enforce its terms as so construed, if there be no other fatal objections to it."

In that case a survey was made of the premises on the day following the execution of the agreement, and a sketch thereof made by the surveyor was admitted in evidence as a part of the contract, and the court held that the written contract, in the light of the subsequent act of the parties, established the property to be conveyed so as to satisfy the requirements of the statute of frauds.

Nowhere do we find a greater divergence of opinion on a legal question than that which exists in the various jurisdictions of last resort in this country upon a construction of the statute of frauds and with respect to what may be sufficient to meet the calls of the statute. This court has also traveled some distance beyond what might properly be deemed the intent entertained by the legislative body in enacting this law. The liberal construction placed on such statute made itself manifest at a very early date in the judicial history of this state, and this spirit of liberality has continued without interruption up to the present time, and we must therefore conclude that such constructions as were placed upon the statute by this court have been so firmly rooted as to constitute definitely the law of this state. See *Wis. Cent. R. Co. v. Schug,* 155 Wis. 563, 145 N. W. 177; *Gifford v. Straub,* 172 Wis. 396, 179 N. W. 600; *Brown v. Marty,* 172 Wis. 411, 179 N. W. 602; *Graham v. Lamp,* 174 Wis. 373, 183 N. W. 150; 27 Corp. Jur. p. 272; 1 Warvelle, Vendors, § 96. For cases where the description was so indefinite as to be beyond the aid of oral testimony to establish, see *Durkin v. Machesky,* 177 Wis. 595, 188 N. W. 97; *Wirthwein v. Dailey,* 182 Wis. 200, 196 N. W. 221.

In the instant case the contract itself referred to a building under construction consisting of four stores, situated on Oakland avenue, in Shorewood, county of Milwaukee, state of Wisconsin. On its face it would appear that this description, in and of itself, is not adequate. Oral evidence, however, was introduced to the effect that the plaintiffs took

possession of the property, placed "For rent" signs in the windows, and advertised the property for rent in a newspaper in the city of Milwaukee.

The agreement also contains the following provision: "Seller agrees to furnish complete merchantable abstract of title extended to date showing real estate free and clear of all legal liens and incumbrances. . . ." It is undisputed that an abstract of the property was furnished to the plaintiffs and that they delivered the same to their attorney for examination. An abstract of title of real estate, delivered under circumstances like those existing herein, can mean an abstract of no other property than that intended to be conveyed by the written agreement. Such an abstract is of no value whatever unless it specifically describes the real estate. Furthermore, in order to comply with the terms of the agreement, it was necessary for the abstract to disclose a good, merchantable title of every square inch of the property contracted for. The contract itself was partially performed, in that possession was delivered by the defendant to the plaintiffs and accepted by them.

In the case of *Bulkley v. Devine,* 127 Ill. 406, 20 N. E. 16, the real estate was described as "The house known and numbered as No. —— Thirty-second street." The purchaser took possession of the property and paid rent for the use of the premises. The court held that under these circumstances no advantage could be taken by the purchaser of the indefiniteness appearing in the description itself. In its opinion the court said:

"On the undisputed facts the defense is self-refuting. Can he, having executed the contract, taken possession under it, held possession and paid rent under it, both to his lessor and appellee, now repudiate that contract because it does not definitely describe the house. . . . Extrinsic proof is always competent to identify the subject matter of a contract, if necessary. . . ."

We therefore conclude that the contract is valid, and is not subject to the alleged objections of invalidity urged by plaintiffs' counsel.

As has heretofore been said, plaintiffs' action is brought to recover from the defendant the amount paid as earnest money upon the contract. Before the time arrived for the consummation of the executory contract of sale, the plaintiffs repudiated the contract and notified the defendant that they were unable to proceed with the consummation, and would not proceed, on account of their financial disability. The act of the plaintiffs therefore amounted to an anticipatory breach. The defendant, in that situation, not being in default, but having lived up to his contract, had available the following remedies: 1. He could have maintained an action for damages against the party in default, or under the proper circumstances could sue in equity for affirmative relief of specific performance or for the negative relief of injunction, rescission, or cancellation. 2. He could have elected to treat such breach as a discharge and refuse to perform further, and use the breach as a defense. 5 Page on Contracts, p. 5338, § 3023.

When the time arrived for the consummation of the contract the defendant made a proper tender of performance, which the plaintiffs refused. As an answer to the plaintiffs' complaint the defendant pleaded the plaintiffs' breach of the contract, the tender made by him, and the refusal of the plaintiffs to comply with the terms of the contract. It was further alleged in defendant's answer that he had at all times been ready, able, and willing to perform the contract, and that he was still ready, able, and willing so to do. As relief he prayed for a decree for specific performance. Upon the pleadings of the parties thus referred to, the case remained in the civil court awaiting trial for a period of over a year. Several months prior to the time when the case was reached

for trial the defendant sold the property, and by this act placed himself in a position where he could no longer perform.

It requires no citation of authority or statute to the effect that the civil court of Milwaukee county has no jurisdiction in equity and that it cannot decree specific performance. The relief therefore prayed for in the answer of the defendant could not be granted by the civil court, and the issue raised by such answer, if permitted to remain as a plea, would have required the transfer of the case from the civil court to the circuit court. When, however, the case was reached for trial in the civil court, the plea of specific performance was abandoned, and defendant moved the court to substitute in its place a counterclaim based upon plaintiffs' breach of the contract for damages sustained by such breach, consisting of alleged loss of rentals and the obligation which he incurred to pay the commissions; and that his total damage amounted to $966, for which amount he prayed for an affirmative judgment against the plaintiffs. This motion of defendant's counsel was granted. Prior, however, to the granting of this motion the plaintiffs' counsel in open court tendered performance on the part of the plaintiffs, and it was then made to appear that the defendant no longer could comply, on the ground that several months prior thereto he had sold the property.

The circuit court held that in tendering performance and in pleading such tender and a willingness at all times to perform, and in praying for specific performance, the defendant refused to accept plaintiffs' breach as a breach, and that he held the contract open not only for his own benefit but also for the benefit of the plaintiffs, and that in selling the property as he did, several months prior to the time when the case came on for trial in the civil court, he precluded himself from retaining the earnest money, and that the plaintiffs were entitled to recover the same, in accordance with the prayer of their complaint.

This decision of the circuit court is based upon the case of *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 495, 103 N. W. 236, 104 N. W. 920, where it is said:

"The law with regard to an anticipatory breach of an executory contract doubtless is that the other party must treat it as a breach, and that if he do not do so, but continue to demand performance, he will be held to have kept the contract alive for the benefit of both parties. In other words, he cannot treat the repudiation both as a breach and as no breach *at the same time.* . . . The defendant never treated the plaintiff's repudiation as a breach; but has *continued to demand performance,* and has thus kept the contract alive, and must now show ability to perform on its own part in order to defeat plaintiff's claim for recovery of his earnest money." (Italics ours.)

In the opinion of the circuit court it is said:

"The defendant had a choice of two inconsistent positions, and he exercised such choice, as evidenced by the language contained in his answer." The opinion also contains the following: "The allegation in the original answer showed exactly where the defendant stood with reference to the contract. It had the same legal effect as would a letter or notice from defendant to plaintiffs containing the same or similar language expressing defendant's position. It showed conclusively that defendant did not accept plaintiffs' repudiation as a breach of contract, but that he continued to demand performance, thus keeping the contract alive up to the date of the trial."

In brief, the view was expressed by the circuit court (and in this we fully agree) that notwithstanding the lack of jurisdiction of the civil court to try and determine an issue of specific performance, the answer itself served the purpose of a notice expressive of the defendant's attitude with respect to plaintiffs' breach.

The circuit court evidently was misled by the language used in the opinion in the *Woodman Case, supra,* wherein it is said: "In other words, he cannot treat the repudiation both as a breach and as no breach at the same time." From

this such court evidently inferred that the remedy for specific performance and that for the recovery of damages for breach of contract constituted two inconsistent remedies, and that by exercising a choice, which he did, viz. to demand specific performance, defendant precluded himself from prosecuting a claim for damages. What this court did say in the *Woodman Case* was that a party could not *at the same time* treat the repudiation as a breach and as no breach. It appears clearly that the defendant did not at the same time consider the repudiation both as a breach and as a non-breach; on the contrary, when the amendment was allowed, the defendant, being no longer able to perform, elected to consider plaintiffs' repudiation as a breach; furthermore, it is equally clear that the remedy of specific performance and that prosecuted to recover damages are not inconsistent remedies, because they are both based upon the contract. In the case of *Connihan v. Thompson,* 111 Mass. 270, in the opinion of the court it is said:

"It is contended that, by commencing an action at law in which the land in question was specifically attached, the plaintiff waived his remedy in equity. But the remedy in equity, by compelling specific performance, and that at law in damages for the breach are both in affirmance of the contract. They are alternative remedies, but not inconsistent; and remedy in both forms might be sought in one and the same action. If the plaintiff institutes separate actions, he cannot carry both to judgment and satisfaction. He may be compelled by order of the court, at any stage of the proceedings, to elect which he will further prosecute. *Living-stone v. Kane,* 3 Johns. Ch. (N. Y.) 224; *Rogers v. Vosburgh,* 4 Johns. Ch. (N. Y.) 84. But the mere commencement or pendency of one will not bar the other, or defeat the action. 1 Chitty, Pl. (6th Am. ed.) 243." See, also, *Balleisen v. Schiff,* 121 App. Div. 285, 105 N. Y. Supp. 692.

From the foregoing it conclusively appears that the equitable remedy for specific performance and the legal remedy

to recover damages are not inconsistent, especially where the action to recover damages is prosecuted after the abandonment of a plea for specific performance.

The civil court in the instant case allowed the amended answer, and the case was tried upon the issues raised thereby. The damages, as appears from the evidence, consisted of loss of rentals, and an obligation to pay commissions, amounting to the sum of $966. In computing these damages, for which the learned civil judge ordered judgment for the defendant, the trial court did not take into consideration the sum of $500 which the plaintiffs had paid to the defendant as earnest money at the time the contract was entered into. The court further held that "The correct rule of damages, if defendant is entitled to recover under his counterclaim as set up in the amended answer, is the difference, if any, between the price fixed in the contract and the reasonable value of the property when the contract was breached."

In 39 Cyc. 1992, it is said:

"According to the great weight of authority the proper measure of damages in case of a breach by the purchaser of the contract of purchase is the difference between the contract price and the actual or market value of the property at the time of the breach of the contract, less that portion of the purchase price if any which has already been paid. . . ." See, also, *Prichard v. Mulhall*, 127 Iowa, 545, 103 N. W. 774; *Allen v. Mohn*, 86 Mich. 328, 49 N. W. 52.

On the basis, however, of the *Woodman Case, supra*, the circuit court held that the defendant, having made it impossible for him to perform at the time of the trial, cannot retain the earnest money, and ordered judgment in plaintiffs' favor for such amount.

The defendant appealed from the judgment of the circuit court and in his brief filed in this court states that he concurs with the ruling of the circuit court upon the subject of damages; in other words, he admits that the damages at-

tempted to be proven could not legally be allowed.  So that we now have before us on this appeal the sole issue as to whether the judgment entered in plaintiffs' favor for the amount of the earnest money paid upon the contract can be sustained as a matter of law.  In 39 Cyc. 2025, it is said:

"Where the purchaser without cause refuses to perform his contract, or is in default in making payments thereunder, he is in no position to recover the instalment or instalments which he has already paid; accordingly in such a case, if the vendor is in no default, no recovery can be had; . . ."

This rule is supported, as will appear from the notes under the principle so announced in the text, by many cases in courts of last resort.  See particularly note 58.  See, also, original opinion in *Woodman v. Blue Grass L. Co.* 125 Wis. 489, 103 N. W. 236, 104 N. W. 920.

In 27 Ruling Case Law, p. 624, § 378, it is said:

"It is immaterial that the vendor, after the purchaser has expressly refused to complete the purchase and has renounced the contract, resells the land, as to say that the subsequent sale of the land gives a right to the purchaser to recover back the money paid on the contract would, in effect, be saying that the vendor could never sell it without subjecting himself to an action by the purchaser; and this has been held true though the vendor immediately after the renunciation of the contract by the purchaser resold the land at an advanced price."

See *Sanders v. Brock,* 230 Pa. St. 609, 79 Atl. 772, 35 L. R. A. n. s. 532; *Glock v. Howard & Wilson Colony Co.* 123 Cal. 1, 55 Pac. 713, 69 Am. St. Rep. 17, 43 L. R. A. 199.  See, also, note in L. R. A. 1918 B, 544.

In *Hurley v. Anicker,* 51 Okla. 97, 151 Pac. 593, the court said:

"After the vendee's breach of the covenant to pay, what are the vendor's rights?  First, to stand upon the terms of his contract, and sue for its breach under sec. 3307 of the Civil Code; second, still resting upon the contract, he may

remain inactive, yet retain to his own use the moneys paid by the vendee, so that it is of no moment whether or not the contract declares that such moneys shall upon the breach be forfeited as liquidated damages; third, going into equity, still upon his contract, he may seek specific performance; or, finally, if his generosity prompts him so to do, he may agree with the vendee for a mutual abandonment and rescission, in which last case, and in which last case alone, the vendee in default would be entitled to a repayment of his money."

See, also, digest of numerous decisions contained in a note to the *Sanders Case, supra,* in 35 L. R. A. N. s. 532, 534.

From this it follows that the judgment of the circuit court must be reversed, and the cause remanded with directions to enter judgment in defendant's favor dismissing plaintiffs' complaint with costs.

*By the Court.*—It is so ordered.