SCHWARTZ and wife, Appellants, vs. SYVER, Respondent.

*June 5—July 3, 1953.*

For the appellants there was a brief and oral argument by *John B. Morrissy* of Lake Geneva.

For the respondent there was a brief by *Moran, O'Brien & Richardson* of Delavan, and oral argument by *R. G. Richardson*.

BROWN, J. Plaintiffs submit that the document which they signed was not a contract but only an offer to purchase which they rescinded before it was accepted. It is not an instrument to do credit to a lawyer but we agree with the learned trial court in holding it to be a sales contract, as it describes itself to be, identifying property to be sold, specifying the terms of payment, signed by the contracting parties, and partly performed by the buyers. The signing by the seller and his receipt of part of the purchase price cannot reasonably be interpreted as anything but an acceptance of the buyers' offer; hence, a contract.

Plaintiffs contend that the "Sales Contract" does not satisfy the statute of frauds, sec. 240.08, because the description of

the property was not definite and certain. It appears that there is actually no land platted and recorded as lot 13A, block 2, Wooddale, etc. There is a lot 13, so platted and recorded. Defendant formerly owned all of it but sold a part several years ago. At that time he drew a line in pencil on his copy of the plat, on display in his office, dividing lot 13 into two parcels and marked the part which he retained 13A and the part then sold as 13B. This map was shown to the plaintiffs during the negotiations for this sale. The defendant also took plaintiffs to the ground and showed them the corners of lot 13A and measured the boundaries for them. We have long held that the statute of frauds is satisfied in this respect if from the description given in the contract or memorandum, supplemented by other evidence, the property sold can be definitely ascertained. *Pierson v. Dorff* (1929), 198 Wis. 43, 223 N. W. 579; *Kuester v. Rowlands* (1947), 250 Wis. 277, 26 N. W. (2d) 639; and *Gifford v. Straub* (1920), 172 Wis. 396, 179 N. W. 600. As these cases and other authorities cited therein show, parol evidence which explains the terms used without altering them is admissible for such supplementary purpose. The plaintiffs were shown the location of the so-called lot 13A on the plat in defendant's office, and were shown the location and the dimensions on the ground. The same parcel may readily be located again by the same evidence, following the same procedure. The contract is not void by reason of this objection. And even if the statute of frauds prevented enforcement of the contract that would not entitle plaintiffs to the return of their money.

*"Where Vendee under Executory Contract is in Default. . . . So long as the vendor is not in default and is willing and able to perform, the purchaser cannot wrongfully refuse to complete the transaction and recover what he has paid toward the purchase money. Moreover, according to the great weight of authority, this general rule applies even though the contract of sale is oral and for such reason cannot,*

on account of the statute of frauds, be enforced by action against the purchaser." 55 Am. Jur., Vendor and Purchaser, p. 927, sec. 535.

Another ground of appeal is that the trial court did not permit plaintiffs to show that the house did not conform to zoning restrictions. Actually, the trial did not reach that point. Counsel asked defendant if the zoning ordinance permitted a house on a lot of that size. Defendant replied that when the house was built it did not violate any restriction but that it did not conform to the present ordinance. The court sustained an objection to a further question as immaterial; counsel withdrew the question and did not pursue the subject. He made no offer of proof of an ordinance or a violation of it. The sales contract made no representation concerning zoning. The complaint ignores the subject. Non-conformity was not given by plaintiffs as a reason for repudiation. We cannot find that plaintiffs have preserved any right to review the trial court's disposition of this feature even if it had been erroneous under the circumstances.

Finally, plaintiffs argue that defendant's retention of their down payment results in a forfeiture which the law does not permit. Under circumstances such as those at hand, the Wisconsin decisions are against them.

"The effect of such termination is to stop the performance at the point then reached, subject to the payment of damages, but not to undo what has already been done thereunder. In other words, the act of termination or repudiation stops the progress of events just where it finds them, but has no retro-active effect, and cannot, in reason, have any such effect. Applying that principle to the present case, it is very plain that the plaintiff cannot recover. The earnest money was voluntarily paid by the plaintiff at the inception of the contract as a part payment thereon and was rightfully in defend-ant's possession. The plaintiff repudiated the contract while there was still ample time for the defendant to perform. By that act he did not and could not affect the character of the

acts which had already been performed in carrying out the contract, and manifestly could not reinvest himself with the title to the earnest money. This is so plain that further discussion is unnecessary." *Woodman v. Blue Grass Land Co.* (1905), 125 Wis. 489, 494, 103 N. W. 236, 104 N. W. 920, cited with approval in *Pierson v. Dorff* (1929), 198 Wis. 43, 223 N. W. 579.

The *Pierson* and *Woodman Cases, supra,* denied recoveries of a down payment and of earnest money, just as the trial court denied similar recovery in the case at bar. The great weight of authority supports all three decisions but certain language in the precedent cases, relied on by the trial court, is susceptible of being understood to prevent the vendee's recovery of any and all money he may have paid the vendor, if the vendee's repudiation of the contract is without legal excuse. We think it well to say now that we are in accord with the trend of modern decisions which recognize that when the result of retention of moneys paid upon a contract by a vendee who later repudiates his obligation is a clear, unjust enrichment of the vendor, the vendor may be required to return such part of the payments as exceeds the loss which the vendee's default causes him. This principle of current decisions is well treated in the following extracts from authoritative texts.

"Where the vendor does not rescind *and the retention of purchase money paid does not unjustly enrich the vendor,* a vendee who repudiates his contract without legal excuse is not entitled to recover from the vendor money paid in part performance of an executory contract, even though the contract contains no forfeiture clause or provision for the retention by the vendor of the money so paid as liquidated damages." 55 Am. Jur., Vendor and Purchaser, p. 927, sec. 535. (Italics ours.)

"*Recovery by one who has broken his contract.* Few questions in the law have given rise to more discussion and difference of opinion than that concerning the right of one

who has materially broken his contract without legal excuse to recover for such benefit as he may have conferred on the other party by part performance of an indivisible contract or by the performance of an indivisible fraction of a divisible portion of a contract. A satisfactory solution is not easy, for two fundamental legal policies seem here to come in conflict. On the one hand, it seems a violation of the terms of a contract to allow a plaintiff in default to recover—to allow a party to stop when he pleases and sell his part performance at a value fixed by the jury to the defendant who has agreed only to pay for full performance. On the other hand, to deny recovery often gives the defendant more than fair compensation for the injury he has sustained and imposes a forfeiture on the plaintiff. The mores of the time and place will often determine which policy will be followed. But the second of these opposing policies has steadily increased in favor in recent years. Except where the obliquity of the defective performance is of a sort that indicates moral obliquity, and where, therefore, the courts feel that the one who is in default may properly be penalized, the tendency is to grant him restitution if a substantial net benefit has accrued to the defendant by partial performance." 5 Williston, Contracts (rev. ed.), pp. 4118–4119, sec. 1473.

*"Vendee Has no Right of Restitution Unless Payments Exceed the Vendor's Injury.* If the vendor has exercised his power created by the vendee's breach and has terminated the vendee's property interest and also his own right to specific performance, must he give back any part of the payments already received? This question requires the consideration of two more matters: First, the proportion that these payments bear to the amount of injury suffered by the vendor; and secondly, the effect of an express provision in the contract that, in case of breach by the vendee, the vendor may retain some or all of the payments made. First, is there any unjust enrichment? Secondly, does the contract make a valid liquidation of damages or does it prescribe a penalty or forfeiture?

"Whether the vendor has 'rescinded' for the vendee's breach or not, and whether there is an express provision for forfeiture or not, it is clear that the vendee in default should

in no case be given restitution of money paid unless it affirmatively appears that the money so paid is in excess of the injury caused to the vendor by the breach. The vendee sues because he asserts that retention of the money is unjust enrichment; but there is no injustice if the defendant is retaining no more than the amount of injury caused by the plaintiff's breach. In cases where the plaintiff may have a right of restitution, he should be permitted to show that the defendant's injury is less than the instalments paid; but unless he successfully shows this, he should recover nothing.

"In very many of these instalment cases, the amount actually paid by the plaintiff, for the restitution of which he sues, was a small amount in comparison with the entire contract price. Sometimes it was merely a first instalment or earnest money. In such cases, it is unlikely that the amount retained by the vendor was greater than the injury suffered by the plaintiff's breach. Whatever the amount, the plaintiff must show that it is greater than the injury done. In most cases that injury is wholly unliquidated and difficult of accurate estimation; and in few cases does the plaintiff attempt to show how much it was. The defendant is not resting merely on the 'letter of his bond;' he is an injured party, from whom a wrongdoer is asking the court to take money. The plaintiff has no bond upon which to rest, either in letter or in spirit. He is asking for justice. The very justice that he seeks requires him to make reparation for his wrong and, before awarding judgment, requires him to show that retention by the defendant is unjust." 40 Yale Law Journal, 1013, 1023–1025, The Right of a Defaulting Vendee to the Restitution of Instalments Paid, by Arthur L. Corbin.

Proof that the money paid by the vendee exceeds just compensation to the vendor for the damages caused by vendee's default is essential to the vendee's recovery upon the unjust-enrichment theory but the plaintiffs in the present case made no effort to produce such proof though the burden of supplying it was theirs. Indeed, they could hardly do so without abandoning the allegation of their complaint that their rescission was justifiable because of defendant's misrepresenta-

tion of the value of the realty. In support of that they chose to testify that they declined to perform their contract because the place was not worth the amount they had contracted to pay on it, thus conceding that the defendant had lost an advantageous sale by their repudiation. The fact remains that two months after plaintiffs' breach defendant sold the property to others for $11,000, so we are still concerned with the claim that if the defendant may also retain the earnest money he will be unjustly enriched. As to that, the authorities are uniform that a moderate payment of earnest money, bearing the approximate relation to total price that such payment does here, is not to be refunded to a vendee who changes his mind. *Pierson* and *Woodman Cases, supra.*

"If all that the plaintiff has performed is the making of a comparatively small advance payment as earnest money, he has no right to its restitution in case of his own later breach." Restatement, 2 Contracts, p. 629, sec. 357, comment *i*, sub. (2).

". . . the purchaser who, without legal cause, refuses to perform his contract or is in default in making payments thereunder, where time is of the essence, cannot recover the instalments paid on the purchase price, *at least to the extent of the down payment or earnest money,* or where the contract validly provides for a forfeiture, in the absence of a showing by the purchaser of equitable grounds for relief. However, it has been held inequitable to allow the vendor to retain more than compensatory damages *or more than the deposit,* particularly where he resells to a subsequent purchaser at a profit." 66 C. J., Vendor and Purchaser, pp. 1487–1490, sec. 1577.

Furthermore, there was no evidence bearing upon the extent of defendant's loss due to plaintiffs' repudiation, except that the place was later sold at an advance. This, by itself, is insufficient to establish unjust enrichment. Obviously, the entire difference between the sale prices to plaintiffs and to

the second purchaser was not profit, for defendant lost at least the value of the effort which he had put into negotiating the first sale. Defendant testified that he refused to return the initial $500 because he considered that he had earned it. Plaintiffs did not attempt to show that he had not, nor did they show that the second sale, aside from the contract price, was as favorable in its terms to defendant as the one which they had repudiated, nor that the new purchasers were as desirable as were the Schwartzes from the standpoint of credit or otherwise. It does appear that before Mr. Syver could interest the new buyers he had to build a screen porch on the house. In short, there is no evidence of the value of any of the variations, except price, between the first deal and the second. Ignoring for a moment the principle that a defaulting vendee cannot recover earnest money, the burden of such proof is the plaintiffs', and in its absence the award to them of any part of the money paid,—as being in excess of the damage caused to defendant by their breach,—would have no support except speculation.

We conclude that the record shows no ground on which plaintiffs are entitled to judgment in any amount.

*By the Court.*—Judgment affirmed.

CURRIE, J. (*dissenting in part*). I am in full accord with the principle enunciated in the able majority opinion written by Mr. Justice BROWN that the right of a vendee, who without legal cause repudiates a contract to purchase land, to recover his down payment is dependent upon showing that the vendor will be unjustly enriched if he is permitted to retain the same.

Prof. Arthur L. Corbin, in his article in 40 Yale Law Journal, 1013, 1032, entitled "The Right of a Defaulting Vendee to the Restitution of Instalments Paid," summarizes his conclusions as follows:

"The cases denying restitution can, in the light of the preceding discussion, be justified on one or more of the following grounds: (1) The defendant has not rescinded and remains ready and willing to perform, and still has a right to specific performance by the vendee; (2) the plaintiff has not shown that the injury caused by his breach is less than the instalments received by the defendant; (3) there is an express provision that the money may be retained by the vendor and the facts are such as to make this a genuine provision for liquidated damages, and not one for a penalty or forfeiture. *If the facts are such that none of these justifications exists, restitution should be allowed."* (Emphasis supplied.)

It is clear that the instant case does not fall within (1) and (3) above. With respect to (2) above, the plaintiff vendees did establish that approximately two months after they breached their contract the defendant vendor sold the premises to another purchaser for $1,500 in excess of the contract price which the plaintiffs had agreed to pay for the same. This *prima facie* established that defendant had sustained no loss by reason of plaintiffs' breach of contract, and it then devolved upon defendant to prove special damages in order for him to claim a forfeiture of plaintiffs' down payment.

Inasmuch as the trial court apparently held on the authority of earlier decisions of this court that defendant was entitled to retain the down payment, irrespective of whether he sustained any damages by reason of plaintiffs' repudiation, I would remand the cause for the purpose of a determination of the issue of unjust enrichment. I see no reason why the principle of unjust enrichment should not be applied to a $500 down payment as well as to one of $5,000 in amount.