LONG INVESTMENT COMPANY, Respondent, vs. O'DONNELL, Appellant.

*February 4—February 28, 1958.*

292

294

For the appellant there was a brief by *Tilg & Koch* of Milwaukee, and oral argument by *George W. Koch, Jr.*

For the respondent there was a brief by *Charles L. Goldberg,* attorney, and *Francis X. Krembs* of counsel, both of Milwaukee, and oral argument by *Mr. Goldberg.*

CURRIE, J. The issues on this appeal are as follows:

(1) Is the contract void for lack of mutuality?

(2) Is time of the essence of the contract so that failure of the buyer corporation to pay the balance of the purchase price on July 1, 1953, terminated its rights under the contract?

(3) If time is not of the essence, was it necessary for either party to give notice of demand of performance to the other, as a condition precedent to termination of such other party's interest in the lands covered by the contract?

(4) Is the plaintiff buyer's failure to prove its willingness and ability to perform a bar to its recovery?

(5) Is the plaintiff buyer entitled to a recovery of the $1,500 down payment?

(6) Did the trial court commit error in refusing to honor the defendant seller's affidavit of prejudice?

The appellant seller contends that the contract is void for lack of mutuality. This contention is grounded upon the fact that the buyer had a unilateral right to cancel in the event the lands had not been annexed to the city of Milwaukee by April 1, 1953, or that the sewer had not been installed by July 1, 1953.

It is pointed out in 1 Williston, Contracts (3d ed.), p. 424, sec. 105A, that, when it is asserted that a contract lacks mutuality because of one party being accorded the right to cancel, the problem is one of consideration. If the option to cancel on the part of one party to a bilateral contract goes so far as to render illusory such party's promise to perform, there may be under certain circumstances no consideration to support the contract.[1] 1 Corbin, Contracts, p. 539, sec. 163, warns that in every case of this kind the agreement should be scrutinized carefully to see whether the party, who reserves

---

[1] See "Comment Note:—Reservation of absolute right to cancel as affecting validity of contract so far as executory." 137 A. L. R. 919.

the unlimited right to cancel, did not give some consideration that was not affected by his power to cancel, or whether there has not been a part performance which has made up for the original lack of consideration. However, if the option to cancel is conditioned on some event beyond the power of the party accorded such option to control, there is no problem of want of consideration presented. Professor Corbin in an article in 34 Yale Law Journal 571, 589, entitled, "The Effect of Options on Consideration," states:

"If one of the parties reserves an 'option to cancel' in the event of certain named contingencies beyond his own control, the validity of the contract is not made doubtful thereby. Thus, B may promise to serve A for a year from June 1, and reserve the power to cancel in case of serious illness in his family prior to June 1. The power reserved is a future, conditional power. B will have an option if the condition occurs, not otherwise."

In the instant contract the buyer's right to cancel was conditioned on two events beyond his control, viz., annexation of lands to the city and the installation of a sewer. Therefore, no problem of want of consideration is present here.

We turn now to the issue most strenuously argued on this appeal, *i.e.*, that time was of the essence of the contract. It is the position of the seller that the requirement of the contract, that the balance of the purchase price be paid by the buyer "not later than July 1, 1953" is the clause which made time of the essence. From this it is urged that, the buyer not having performed, the seller was freed from the obligations of the contract and could thereafter dispose of the lands as he saw fit. This court in *Buntrock v. Hoffman* (1922), 178 Wis. 5, 13, 189 N. W. 572, held that "time will not be regarded as of the essence of the contract merely because a definite time for performance is stated therein, without any further provision as to the effect of nonperformance at the time stated." This same principle was again enunciated in

the more-recent case of *Hoffmann v. Danielson* (1947), 251 Wis. 34, 27 N. W. (2d) 759. The instant contract contains no express provision as to the effect to be given the buyer's failure to pay the purchase price on July 1, 1953.

In *Zuelke v. Gergo* (1951), 258 Wis. 267, 271, 45 N. W. (2d) 690, it was asserted, "The importance of time of performance depends upon the terms in the contract and the circumstances appearing from the acts of the parties." The acts of the parties subsequent to July 1, 1953, tend to negative any idea that they considered time to be of the essence of the contract. Subsequent to such date, the president of the buyer corporation made further efforts to have the parcel annexed to the city and informed the seller's agent, Kells, of this, and at no time did Kells demand that the deal be closed. Furthermore, the seller's remedy, which was provided in the contract for breach by the buyer, was retention of $500 of the $1,500 down payment as liquidated damages. If the seller desired to avail himself of such remedy, it was incumbent on him to return to the buyer the excess $1,000 being held by Kells. These acts of practical interpretation by the parties we deem to be significant.

We, therefore, have no hesitancy in holding that neither by the terms of the contract, nor by the acts of the parties, was time made the essence of the contract. This being so, we are faced with the further question of whether it was necessary for the seller to give notice to the buyer of a demand for performance, as a condition precedent to the buyer's interest in the lands being terminated. We deem that such question must be answered in the affirmative under our recent decision in *Peyer v. Jacobs* (1957), 275 Wis. 364, 82 N. W. (2d) 202. In the absence of such a demand upon the buyer for the payment of the balance of purchase price, the buyer's land-contract interest in the lands was not extinguished.

Counsel for the seller assert that, before the buyer can recover in this action against the seller for breach of contract,

the buyer must prove that it was ready, able, and willing to perform the contract on its part by paying the balance of the purchase price due. The complaint contained no allegation that the buyer, at the time of the seller's alleged breach of contract by making sale to a third party, was ready, able, and willing to perform. The general rule is that a party suing for breach of contract must plead and prove that he is ready, able, and willing to perform the agreement on his part. 12 Am. Jur., Contracts, p. 889, sec. 333, and 17 C. J. S., Contracts, p. 1232, sec. 590 (4). However, there is an exception to this rule where the defendant has by his act prevented performance by the plaintiff. In such a case it is not necessary for the plaintiff to allege and prove his own readiness and ability to perform. *Mankofsky-Goldstein Shoe Co. v. J. W. Carter Co.* (Mo. App. 1931), 33 S. W. (2d) 1049, and 17 C. J. S., Contracts, p. 1232, sec. 590 (4). The case at bar is governed by this exception to the rule rather than by the rule itself. This is because the seller's wrongful act in selling to a third person put it without the power of the plaintiff to perform.

In further support of the contention raised with respect to this issue, counsel for the seller maintains that the undisputed testimony discloses that the buyer at no time was ready and willing to perform by paying the balance of the purchase price. The testimony thus relied upon was given by the seller's agent, Kells. Such testimony was to the effect that the president of the buyer corporation had stated to Kells that the buyer intended to wait until the sewer and water were installed before closing the deal. Construing such testimony most favorably to the seller, it amounts to a declaration of refusal by the buyer to pay the balance of the purchase price until the sewer and water were installed. Thus an issue of anticipatory breach is presented. Where one party has repudiated an executory contract, the adverse party has an election to treat it as an anticipatory breach, but, if the

latter fails to do so, then such repudiation is immaterial in an action thereafter brought to enforce the contract. *Dingley v. Oler* (1886), 117 U. S. 490, 503, 6 Sup. Ct. 850, 29 L. Ed. 984; *Cook v. Norstrand* (1948), 83 Cal. App. (2d) 188, 188 Pac. (2d) 282; *Swick v. Mueller* (1951), 193 Or. 668, 238 Pac. (2d) 717; and 12 Am. Jur., Contracts, p. 974, sec. 395. In the instant case it is clear that the seller did not elect to treat the statement made by the buyer's president to Kells as an anticipatory breach. This is because all $1,500 of the down payment was retained. In order to have elected to treat the same as an anticipatory breach, it was necessary that $1,000 of the down payment be returned to the buyer as only $500 thereof was to be retained as liquidated damages in the event of the buyer's breach of the contract.

The damages awarded by the trial court to the plaintiff buyer included, in addition to the difference in amount between the sales price to the third party and the contract price, the $1,500 down payment. Counsel for the defendant contend it was error to provide for the return of such down payment. To allow the defendant seller, or his agent, to retain the same would constitute an unjust enrichment. In *Schwartz v. Syver* (1953), 264 Wis. 526, 531, 59 N. W. (2d) 489, it was intimated that even a buyer who has repudiated the contract may be allowed to recover the down payment, if retention of the same would result in an unjust enrichment of the seller. The trial court, therefore, properly included the amount of the down payment as part of the plaintiff buyer's damages.

The last issue to be considered is whether the trial court erred in refusing to honor the defendant seller's affidavit of prejudice. Such affidavit of prejudice was not made a part of the record on this appeal. The only reference to such affidavit in the record before us appears in the following statement of the trial judge made at the beginning of the trial:

"Yesterday an affidavit of prejudice was filed on behalf of the defendant, and I want the record now to show I reject that affidavit of prejudice as I advised Mr. Koch yesterday, for the reason that the court, having entered upon the proceedings, having issued a formal pretrial order, that the court has involved itself in the merits of this transaction already and that to accept the affidavit would be to abdicate my responsibilities in this case, and I decline to do so. I invited Mr. Koch to advise me as to any reason why I should disqualify myself for prejudice which was not known to me, and there was none presented.

"Accordingly the record in this case will show that the affidavit of prejudice has been filed in the jacket in this case but is not being given credence by the court."

The affidavit not being before us, we have no way of knowing whether it complied with the requirements of sec. 261.08, Stats. For cases where affidavits of prejudice have been held insufficient in form, see 30 West's Wis. Stats. Anno., Title 25, pp. 206–208, sec. 261.08, note 8.

The filing of a properly worded affidavit is a condition precedent to challenging on appeal the refusal of the trial judge to honor such affidavit. We, therefore, decline to consider any issue grounded upon the filing of such affidavit.

Subsequent to July 1, 1953, the seller paid a special assessment in the sum of $485.61 levied against the premises for a road improvement. Under the contract, this should have been paid by the buyer. The trial court in the findings of fact, conclusions of law, and judgment should have granted the seller a credit for this amount to be offset against the buyer's damages. The brief of the buyer on this appeal concedes that the judgment should be modified to give the seller credit for the amount of such special assessment so paid by him.

*By the Court.*—The amount of the judgment is reduced by the sum of $485.61, and, as so modified, is affirmed. No costs shall be taxed on this appeal, the appellant to pay the clerk's fees.