HENRY UIHLEIN REALTY COMPANY, Plaintiff and Respondent, v. DOWNTOWN DEVELOPMENT CORPORATION and another, Defendants and Appellants: BEACON FEDERAL SAVINGS & LOAN ASSOCIATION and another, Defendants and Respondents.

*February 5—March 8, 1960.*

For the appellants there were briefs by *Wickham, Borgelt, Skogstad & Powell,* attorneys, and *Reuben W. Peterson, Jr.,*

of counsel, all of Milwaukee, and oral argument by *Mr. Peterson.*

For the respondent Henry Uihlein Realty Company there was a brief by *Leekley & Williams* and *Steinmetz & Steinmetz,* all of Milwaukee, and oral argument by *Chris Steinmetz* and *Allen W. Williams.*

For the respondents Beacon Federal Savings & Loan Association and John F. Clorus there was a brief by *Quarles, Herriott & Clemons,* and oral argument by *Laurence C. Hammond, Jr.,* all of Milwaukee.

DIETERICH, J.   Henry Uihlein Realty Company sold a parcel of real estate, located in downtown Milwaukee at the southwest corner of North Sixth street and West Wisconsin avenue, to the defendant, Downtown Development Corporation, by land contract dated June 6, 1955.

The contract in form and substance is one which is commonly known as a land contract, printed by the Wisconsin Legal Blank Company and known as Form No. 34, in common and general use for the sale of real estate on credit in the city of Milwaukee and throughout the state of Wisconsin. It contains the following provision, usual to contracts of this type:

"It is distinctly agreed and understood by and between the parties hereto, that, if the said party of the second part shall fail to make any of the payments of purchase money and interest above specified, at the times and in the manner above specified, or fail to pay the taxes and assessments, or fail to insure and keep insured the premises herein as above stipulated, or fail to pay any or all insurance premiums herein specified, or violate any other terms or conditions herein contained, this agreement shall, at the option of the said party of the first part, its successors or assigns, be henceforth utterly void, without any notice whatsoever, and all payments thereon forfeited, subject to be revived and renewed only by the act of the party of the first part, or the mutual agreement of both parties; and whenever such default or violation shall occur, the party of the second part shall have

no further right to collect rents from tenants, if any, of the said real estate, or any part thereof, but such rents shall be collected by, and belong to the party of the first part."

The contract provided for the payment of taxable costs, expenses, and a reasonable attorney's fee in the event of foreclosure by the vendor. It provided that the vendor agrees and binds itself, its successors, representatives and assigns, upon full payment of the purchase price, with interest, and other moneys due under the terms and conditions of the contract, to convey the real estate by warranty deed to the purchaser, its assigns, or legal representatives. The contract also provided: "Any and all moneys received from city of Milwaukee pursuant to the widening of North Sixth street payable to the owner shall be applied on said balance when and as received."

The purchase price was $1,000,000. $100,000 was paid at execution, and the balance was to be paid as follows: $100,000 or more on or before May 27, 1956; $100,000 or more on or before May 27, 1957, and $700,000 or the balance on May 27, 1958. Interest at the rate of four and one-fourth per cent per annum, beginning August 1, 1955, was to be paid on the unpaid balance. It was agreed, however, that interest would be waived during the time that Downtown Development Corporation was constructing a building on the property having a contracted cost of $1,000,000. Interest was waived accordingly from September 16, 1955, to March 20, 1956, when the construction was discontinued.

Taxes for the year 1955 were to be paid by the vendor and purchaser in proportions of $\frac{7}{12}$ths and $\frac{5}{12}$ths, respectively. The vendee agreed to pay when due and payable, all taxes and assessments thereafter assessed or levied on the real estate.

On July 5, 1955, the purchaser, Downtown Development Corporation, assigned its interest in the land contract to the defendant, Atomic Security Corporation, which on the same

day assigned the land contract to the defendant, Beacon Federal Savings & Loan Association.

A portion of the premises was conveyed by the plaintiff to the defendant, Atomic Security Corporation, in consideration of the payment of $248,000 in December, 1956, and that parcel is released from the contract and is not a part of this proceeding.

The plaintiff in its complaint alleges upon information and belief, that the sum of $248,000 constituted the proceeds paid by the state of Wisconsin to acquire the parcel of land for widening North Sixth street. The complaint further alleges:

"That the defendants have failed to pay said purchase price in full in accordance with said contract and have paid on said contract only the sums set forth in the schedule of payments:

1955

| May | 27...Check | $ | 5,000 |
| June | 6...Check | | 45,000 |
| | 6...Commission applied . | | 50,000 |
| Aug. | 18...Check | | 75,000 |

1956

| May | 28...Check | | 25,000 |
| Dec. | 14...Check, city of Milwaukee | | 240,000 |

1957

| Jan. | 29...Check | | 8,000 |
| | Total | $448,000 | |

1956

Jan. 31...Interest paid 8/1/55 to 9/16/55 Date excavation started .................. $4,675.01

"That the total sum now due to plaintiff on the purchase price provided for in said contract, together with interest

at the rate of 4¼ per cent per annum on deferred payments to the 27th day of May, 1958, is $590,718.28; and that said sum is made up as follows:

| | |
|---|---:|
| Principal | $552,000.00 |
| Accrued interest as of 5/27/57 | 35,739.36 |
| Unpaid interest on 5/27/58 | 2,978.92 |
| | $590,718.28 |

"That defendants have failed to pay a balance of the 1957 taxes accruing on the 1st day of January, 1958, and the plaintiff has been obliged to pay said taxes aggregating $11,501.40, including the interest on the amount so paid from the date payment was made to May 27, 1958; making a total of $602,219.68 due the plaintiff from the defendants, Downtown Development Corp. and its assignees, Atomic Security Corp. and Beacon Federal Savings & Loan Association on the 27th day of May, 1958."

The premises are operated as a parking lot in possession of defendants.

The complaint demands that the court set a reasonable time within which the amount due under the contract be paid and in default thereof that defendants be barred and foreclosed of all right and interest in the premises.

The answer of the defendant, Downtown Development Corporation, fails to deny any allegations of the complaint, but does allege the assignment of the land contract by it to the defendant, Atomic Security Corporation. The trial court treated the answer as disclaiming any right or interest in the premises and as a prayer to have the action dismissed as to Downtown.

The answer of the defendants Beacon Federal Savings & Loan Association and John F. Clorus, conservator for Beacon, fails to controvert material issues of the complaint, but does demand that the court adjudge the amount due under the land contract with interest due thereunder, together with plaintiff's costs and disbursements and disbursements as determined in this action, reasonable attorney's

fee, if any, as may be allowed by the court and thereupon to have conveyed by the plaintiff to Beacon Federal Savings & Loan Association a good and sufficient warranty deed in fee simple, conveying the property described in the plaintiff's complaint, exclusive of the property sold to the state of Wisconsin.

The answer of defendant, Atomic Security Corporation, while not disclosing its particular interest in the real estate, admits its default on the land contract, puts the plaintiff to its proof as to the amount due and owing and alleges that certain extensions of time for payment have been granted by the plaintiff to the answering defendant.

As an affirmative defense the defendant Atomic alleges the payment of $448,000 on principal, the expenditure of more than $100,000 in capital improvements to the property, that the fair market value of the property exceeds $1,250,000 and that to grant relief by way of strict foreclosure would result in unjust enrichment to the plaintiff.

The same facts are pleaded by defendant Atomic by way of counterclaim for judgment of restitution in the sum of $558,000.

Defendant Atomic prays for judgment allowing a period of at least eighteen months for redemption and in the event the premises are not redeemed by defendant, and in the alternative, that judgment be entered in defendant's favor for $558,000.

The record discloses that on December 7, 1956, the plaintiff granted an extension of time to pay interest in the amount of $35,739.36 to May 27, 1957. Another extension was granted on October 4, 1957, extending the time to pay interest of $35,739.36, plus principal of $552,000, to May 27, 1958.

The real estate was appraised as follows:

Mr. Guido Scheffer, for plaintiff, at ...... $ 680,000
Mr. Peter A. Berres, for defendant, at .... 975,000
Mr. W. George Bowring, for defendant, at . 1,000,000

There is a difference of $320,000 between plaintiff's and the higher defendant's estimate of the value.

The trial court found that the fair market value of the parcel of land is between $875,000 and $900,000. Only time and the money market will determine whether the plaintiff and vendor will receive upon a sale the amount due on the contract.

The counterclaim and amended counterclaim state that the defendant Atomic had provided improvements in the land totaling $100,000. The original building was wrecked and the excavation was filled and surfaced so as to be used as a parking lot. This certainly did not constitute the type of improvement contemplated under the terms of the contract.

The trial court granted judgment of strict foreclosure and placed the reasonable time for the redemption at ten months from the 23d day of December, 1958, provided the defendants, or either or any of them, pay to the plaintiff on or before October 23, 1959, the amount due under the land contract and in default of such payment, the defendants, and each of them, and all persons claiming under them or any or more of them, subsequent to the date of the filing of the notice of *lis pendens,* shall be forever barred and foreclosed of all right, title, interest, claim, or equity of redemption in and to the real estate remaining under the land contract.

This state has long recognized the right of a vendor to the remedy of strict foreclosure for the vendee's default of the terms of a land contract. This court stated in *Oconto Co. v. Bacon* (1923), 181 Wis. 538, 548, 195 N. W. 412:

"Parties should have some regard and respect for the terms of their own contracts and ought to make the terms thereof conform to their real understanding and not rely wholly or even largely upon a court of equity for protection from their own acts."

It is likewise an elementary principle of law in this state that in a land contract providing for the conveyance of land

upon the future payment of the purchase price, the vendor withholds the legal title as security for the unpaid purchase price. The transaction is held to create between the vendor and the vendee a legal relationship similar to that of equitable mortgagee and mortgagor, giving to the mortgagee the right of foreclosure and the right of equity of redemption to the mortgagor. *Button v. Schroyer* (1856), 5 Wis. 598, and *Harris v. Halverson* (1927), 192 Wis. 71, 211 N. W. 295.

The foreclosure of the land contract being a proceeding in equity does not seek a forfeiture, but affirms the contract and thereby recognizes that the vendee has an equitable interest in the real estate. It treats the contract as in full force and effect. The vendor offers to perform his covenants and asks that the vendee perform his, and only in case the vendee fails to perform within a time set by the court are the vendee's rights thereunder foreclosed. The period of redemption is a matter committed to the sound discretion of the trial court and the factor bearing upon the reasonable period of the equity of redemption is dependent largely on the amount paid by the vendee under the terms of the land contract. *Dickson v. Loehr* (1906), 126 Wis. 641, 106 N. W. 793; *St. Joseph's Hospital v. Maternity Hospital* (1937), 224 Wis. 422, 272 N. W. 669, 273 N. W. 791; *Binzel v. Oconomowoc Brewing Co.* (1938), 226 Wis. 498, 277 N. W. 98; and *Levin v. Grant* (1941), 238 Wis. 537, 298 N. W. 63, 300 N. W. 169.

There being credible evidence to sustain the trial court's findings, the judgment is affirmed.

*By the Court.*—Judgment affirmed.

FAIRCHILD, J. (*concurring*). Appellant vendees seek restitution from respondent vendor for unjust enrichment in the event that vendees fail to perform the land contract within the period of redemption allowed by the court. They point out that the amount of appellants' remaining obligation under the land contract has been determined at $648,769.41,

plus interest from June 1, 1959. If appellants fail to redeem for that amount, respondent's ownership of the property will be relieved of all interest appellants had in it. The property has a fair market value as determined by the court of between $875,000 and $900,000. This, appellants claim, will unjustly enrich respondent by some $225,000, less interest accruing after June 1, 1959.

Appellants argue that the "equitable right of the defaulting vendee to a remedy of unjust enrichment has been gaining recognition in many jurisdictions," and suggest that this court approved the principle in *Schwartz v. Syver* (1953), 264 Wis. 526, 59 N. W. (2d) 489, and *Long Investment Co. v. O'Donnell* (1958), 3 Wis. (2d) 291, 88 N. W. (2d) 674.

In the *Long Investment Co. Case*, defendant agreed in writing to sell land to plaintiff. Plaintiff made a down payment, but the sale was subject to certain contingencies, and transfer of possession would take place upon full payment and conveyance of title. Later, defendant sold the land to a third party for more than the contract price. Plaintiff sued, and defendant claimed, on various grounds, that he had been relieved of any obligation to convey to the plaintiff. The court decided in favor of plaintiff and awarded damages which included the amount of plaintiff's down payment, as well as the difference between the price received from the third party and the contract price. It was said, at page 299, with reference to the down payment: "To allow the defendant seller, or his agent, to retain the same would constitute an unjust enrichment." The *Schwartz Case* was cited.

This decision has no application to the present case. The gain reaped by defendant vendor as a result of his own repudiation of his contract was established beyond question.

In the *Schwartz Case*, defendant agreed in writing to sell property to plaintiffs for $9,500. Plaintiffs made a $500 payment of earnest money, and transfer of possession was

evidently contemplated in the future. Plaintiffs failed to make required payments, and defendant sold the property for $11,000 to a third party. Plaintiffs sued for the return of their earnest money, claiming breach by defendant. The court, however, decided that it was the plaintiffs who had breached. In affirming the judgment, this court decided that plaintiffs had not made out a case for restitution because, notwithstanding the better price received in the second sale, the earnest money was comparatively small and they failed to prove that the amount of the earnest money exceeded just compensation for defendant's loss due to plaintiffs' repudiation. This court did, however, say at page 531:

"We think it well to say now that we are in accord with the trend of modern decisions which recognize that when the result of retention of moneys paid upon a contract by a vendee who later repudiates his obligation is a clear, unjust enrichment of the vendor, the vendor may be required to return such part of the payments as exceeds the loss which the vendee's default causes him."

Portions of discussions of the principle by text writers were quoted.

I do not understand that in declining appellants' request for restitution in the case before us we are withdrawing any portion of the statement above quoted. We do not, however, consider the principle applicable to the facts of this case.

Here we have a land contract with an immediate transfer of possession to the appellant vendees, with a substantial period of time within which to pay the purchase price. Title was retained by the respondent as security. The parties entered into the land contract with the knowledge that in the event of default by the appellants, and the institution of an action by respondent for a declaration that appellants' rights are at an end, the court will fix a period within which appellants may preserve their interest in the property by completing performance. The circuit court has done this in the instant case. Appellants ask that the court impose an addi-

tional condition upon the foreclosure of their rights—that the court will create an additional protection not found in their contract by requiring, in effect, that the respondent repurchase the property at a value fixed by the court.

It seems to us that in the absence of special circumstances not found in the present case, the right to redeem during a reasonable period of time fixed by the court gives a defaulting vendee all the protection to which he is equitably entitled. If appellants cannot, by sale or new financial arrangements, take advantage of the opportunity to protect themselves by redemption within the period given, it would not be equitable to compel respondent to repurchase the property at the value fixed by the court. Inability to redeem would suggest that the property is not worth as much as the court determined, or at least that such value cannot be readily realized in money.

I am authorized to state that Mr. Chief Justice MARTIN, Mr. Justice BROWN, Mr. Justice CURRIE, and Mr. Justice HALLOWS join in this opinion.