BUCKMAN (Ned K.), Plaintiff, v. E. H. SCHAEFER & ASSOCIATES, INC., Defendant and Third-Party Plaintiff and Respondent: H. R. BUCKMAN, C. L. U. & ASSOCIATES, INC., Third-Party Defendant and Appellant.

*No. 226. Argued March 2, 1971.—Decided April 2, 1971.*
(Also reported in 185 N. W. 2d 328.)

756

758

For the appellant there were briefs by *Michael, Best & Friedrich,* and oral argument by *Kenneth K. Luce,* all of Milwaukee.

For the respondent there was a brief by *Foley & Lardner,* and oral argument by *Gerald J. Neal,* all of Milwaukee.

BEILFUSS, J.   Four issues are presented:

(1)  Is that part of the order of May 20, 1970, which struck appellant's two affirmative defenses, appealable?

(2)  Is the second paragraph of appellant's letter of July 17, 1967, a sufficient memorandum to satisfy the requirements of sec. 240.10 (1), Stats.?

(3)  If the letter alone is not sufficient, may a previously existing offer to purchase and acceptance be integrated with the letter to supply the missing terms?

(4) Is appellant entitled to summary judgment dismissing part of the respondent's cause of action?

The respondent, Schaefer, has previously moved this court to dismiss the appeal. The motion was denied with leave to renew such motion at the time of argument. Accordingly, respondent again argues that, under the instant fact situation, an appeal does not properly lie from the orders striking the affirmative defenses.

An order granting or denying a motion to strike a defense is not listed as an appealable order in sec. 274.33, Stats. However, a long line of cases has recognized that a motion to strike may be considered the equivalent of a demurrer in certain circumstances. The most recent case to thoroughly discuss this question was *State v. Chippewa Cable Co.* (1963), 21 Wis. 2d 598, 124 N. W. 2d 616. This opinion postdated all the cases relied on by the appellant and cited them in the course of its discussion. The test set forth in that decision is controlling in the instant case. The opinion states at pages 610, 611:

"An order granting or denying a motion to strike a defense is not among the orders listed as appealable in sec. 274.33, Stats. Sec. 274.33 (3) does authorize an appeal from an order which sustains or overrules a demurrer, and it has been recognized that where a motion to strike challenges the legal sufficiency of the facts set out as a defense it is 'in legal effect not a motion to strike but a demurrer to a separate defense.' Orders granting or denying a motion *of that type* have been held to be orders sustaining or overruling a demurrer and therefore appealable. Other cases have held that a particular motion to strike was not the equivalent of a demurrer, and accordingly an order granting it was not appealable.

"Although the language in the decisions may not have been consistent in every instance, we now hold that a motion to strike an answer or reply, or a portion thereof, as sham, frivolous, or irrelevant, is the equivalent of a demurrer only when all the following propositions are true: (1) The motion is to strike the entire answer or reply, or the whole of one or more defenses separately

stated therein. (2) The motion accepts as true for the purpose of the motion all the allegations of fact in the defense attacked and the motion is not supported by affidavits tending to establish facts different from or in addition to those alleged. (3) The only issue raised by the motion is the issue of law, whether the defense attacked states a defense. If a motion to strike fulfils all the foregoing propositions it is the equivalent of a demurrer even though it is not labeled a demurrer and does not expressly specify that the defense attacked does not state a defense."

The appellant, H. R. Buckman's second affirmative defense is that the memorandum relied on by respondent (the letter of July 17th) failed to comply with the provisions of sec. 240.10 (1), Stats. Initially, the respondent, Schaefer, moved to strike this defense in its entirety, thereby satisfying the first element of the *Chippewa Cable* test. Likewise, the third element is satisfied in that the only issue raised by the motion was a question of law, *i.e.*, whether the letter failed to satisfy the requirement of sec. 240.10 (1).

The parties are in dispute as to the second element of the test. The appellant argues that this defense does not allege any facts but simply that the writing does not comply with the statutory requirements. This, it contends, is a pure question of law. Respondent, on the other hand, argues that this defense impliedly alleges the fact that there were no other documents in existence which would remedy any deficiencies in the letter, and that the affidavit in support of the motion to strike alleges facts to the contrary.

Even if respondent is correct in its argument as to implied allegations of fact, this still did not change the nature of the question before the trial court on this motion. Appellant's defense and respondent's affidavit did not raise any factual dispute, but only the legal issue as to whether all of the documents before the court were sufficient to satisfy the requirements of sec. 240.10 (1),

Stats. This is a question of law and sufficient to satisfy the second element of the *Chippewa Cable* test. Therefore all three elements of the *Chippewa Cable* test appear as to the second affirmative defense, and the motion to strike is the equivalent of a demurrer and is appealable.

In the appellant's first affirmative defense, in which payment of the commission due on the Summit properties' transaction is alleged, the situation is different. The first element of the test is satisfied in that respondent moved to strike the defense in its entirety. But as to the second element, though respondent's affidavit admits that $9,000 was in fact paid, it denies that it was in payment of the Summit properties' commission, and alleges that in fact no application of this amount was ever directed or made by either party. In light of this factual dispute the motion raises more than the legal issue of whether a defense has been stated, and it fails to satisfy the second and third elements of the test.

Therefore, the motion to strike the defense of the statute of frauds was in legal effect a demurrer, and that portion of the trial court's order granting it is appealable. The motion to strike the defense of payment may not be considered the equivalent of a demurrer because of a factual dispute, and that part of the order granting it is not appealable and the appeal from the order should be dismissed as to the first affirmative defense. As the respondent, Schaefer, concedes, the dismissal of the appeal as to this part of the order is not conclusive of the issue raised. It is simply the dismissal of an interlocutory order and the issue can be reconsidered in the event there is an appeal from the judgment ultimately rendered in the case.

The appellant, H. R. Buckman, pled as its second affirmative defense that the second paragraph of its letter to respondent, regarding the commission to be paid on the Wisconsin Wire Works' transaction, was insufficient

as a note or memorandum of their contract under sec. 240.10 (1), Stats. That section provides:

"Every contract to pay a commission to a real estate agent or broker or to any other person for selling or buying real estate shall be void unless such contract or note or memorandum thereof describing such real estate, expressing the price for which the same may be sold or purchased, the commission to be paid and the period during which the agent or broker shall procure a buyer or seller, be in writing and be subscribed by the person agreeing to pay such commission."

The appellant concedes that the letter of July 17th sufficiently describes the real estate and the commission to be paid but contends that the letter failed to express (1) the price for which the land was to be purchased, and (2) the period within which a seller was to be obtained as required by the statute.

The only language of the letter which could be construed to express the purchase price are the words "total cost to us as purchasers of the building." The commission was to be three percent of this "total cost." The trial court found that the letter was sufficient to comply with sec. 240.10 (1), Stats., and though it is not clearly expressed in the memorandum decision, it appears that the court was influenced by the fact that in a subsequent contract appellant and the prospective seller had agreed upon a price of $671,125 unless the parties decided to arrive at a different price by capitalizing the lease. Still, however, the court apparently found that the letter was sufficient without incorporation of any other documents.

The trial court relied upon *Mikkelson v. Faber* (1928), 195 Wis. 64, 217 N. W. 702, to sustain its finding. The *Mikkelson Case* involved a written agreement which gave the plaintiffs the right to sell a certain property for the sum of $7,200, or any other price which the principal might authorize. This court found that such a provision

was sufficient to express the sales price, stating at page 66:

"It may be conceded that unless the property is sold for $7,200 the agreement does not fix definitely in dollars the amount of the sale price; but it does provide a basis upon which a commission may be definitely computed, and this answers the provisions of the statute and complies with the purpose for which it was enacted. *Gifford v. Straub,* 172 Wis. 396, 400, 179 N. W. 600."

Respondent relies upon the *Mikkelson Case* and the *Gifford Case* where the court stated in *Gifford,* at page 398, that:

"The writing relied on to establish the contract need not describe the land which is subject to sale otherwise than by a reference therein to some extrinsic fact by means of which the land can be known with sufficient certainty. . . ."

By combining these two decisions together, the respondent concludes that the memorandum need only provide some basis upon which a commission may be computed, and that this is satisfied if reference is made to some extrinsic fact which will provide such a basis.

Initially, both cases should be distinguished from the instant one on their facts. The *Mikkelson* memorandum did fix an actual dollar amount as the sales price, though it provided that the price could later be modified by the principal. In finding a definite basis upon which the commission could be computed, this court apparently was referring to this actual dollar amount, not the language concerning whatever price might later be agreed upon.

In the *Gifford Case* the reference to extrinsic facts concerned a determination of the description of the land, something fixed and certain, not a sales price, which is variable and ambiguous as to what items may be included in its computation.

The appellant, H. R. Buckman, relies upon *Wozny v. Basack* (1963), 21 Wis. 2d 86, 123 N. W. 2d 513, which involved the sufficiency of a brokerage contract for the leasing of real estate under sec. 240.10, Stats. The contract failed to express the terms of rental as required by the statute, but only required that the broker secure a "suitable tenant." In holding that the provision was insufficient to state the terms of rental, the equivalent of the purchase price here, this court said at page 88:

"This court has also held that where the contract contains no terms of rental except as might be implied from a provision that a commission will be paid if a 'satisfactory deal is consummated' between the broker's employer and a prospect, the statute is not fulfilled and the listing contract is void. If a contract for commission conditioned upon a 'satisfactory deal' is insufficient for failure to express terms of rental, a contract conditioned upon the finding of a 'suitable tenant' can enjoy no greater validity." *Also see: Brest v. Maenat Realty Co.* (1944), 245 Wis. 631, 15 N. W. 2d 798; *Prinz v. Aussem* (1932), 207 Wis. 603, 242 N. W. 183.

We have found little other authority in our cases concerning the statement of a purchase price in a brokerage contract. However, this court has often said that in order to carry out the legislative intent, contracts which do not substantially comply with the section should be held void. *Raskin v. Hack* (1962), 16 Wis. 2d 296, 114 N. W. 2d 483; *Hale v. Kreisel* (1927), 194 Wis. 271, 215 N. W. 227. Sec. 240.10 (1), Stats., expressly requires that a purchase price be stated in the contract or memorandum. The memorandum in this case, in effect, states that the price will be whatever it costs to purchase the property. If this is found to be substantial compliance with sec. 240.10 (1), it would effectively eliminate the statutory requirement that a price ever be stated. Any time a brokerage contract referred to a sale it could be said that the sale constituted an extrinsic fact by which the price

could be determined simply by looking to see how much was paid. Such a result, in our opinion, would be in violation of sec. 240.10 (1).

Admittedly, where a sale has been consummated by the principal there is an argument in favor of allowing the terms of that sale to supply the missing sale price in a brokerage contract. However, the decisions of this court which deny recovery by a broker on a theory of *quantum meruit* challenge the persuasiveness of that argument. *See: Otto v. Black Eagle Oil Co.* (1954), 266 Wis. 215, 63 N. W. 2d 47; *Hale v. Kreisel, supra.* Recovery upon *quantum meruit* is denied upon the basis that it would nullify the statute. To allow a missing term in a brokerage contract to be supplied by the terms of the actual sale would have the same result.

The memorandum (the letter of July 17th) does not comply with the statute inasmuch as it does not set forth the purchase price. The respondent contends this deficiency can be remedied by reference to collateral documents. This contention will be considered in a later stage of the opinion.

The appellant, H. R. Buckman, also contends that the letter was inadequate to comply with sec. 240.10 (1), Stats., because it failed to state the time period within which respondent was to obtain a seller. The respondent argues that the time period is specified in that all of the services had already been performed, and the letter used the past tense, "For your services rendered in having obtained. . . ."

Generally, when a broker contracts to "sell" real estate he is obligated merely to procure a purchaser ready, willing and able to buy on the terms specified by the seller, and within the time provided in the memorandum. He has earned his commission when he timely produces such a person. Conversely, when a broker contracts to "buy" real estate he has earned his commission when he timely

produces a seller ready, willing and able to sell an acceptable piece of real estate on the terms specified in his brokerage contract.

The letter of July 17th does indicate that services were performed in having found a seller, but it is ambiguous as to whether further services by respondent were contemplated. The last sentence of the paragraph reads:

"This finders fee will be payable upon satisfactory completion of the entire transaction, including the securing of a mortgage in an amount not to exceed sixty percent (60%) of the cost to us as purchasers."

While this sentence may be interpreted as simply stating a future event as a time for payment, it may also fairly be interpreted as meaning that future services by respondent in connection with securing the mortgage and the satisfactory completion of the transaction were contemplated as a condition precedent to earning the commission.

The appellant relies on *Karl M. Elbinger Co. v. George J. Meyer Mfg. Co.* (1958), 3 Wis. 2d 202, 87 N. W. 2d 807. In this case plaintiff sued for a broker's commission allegedly due for services in negotiating leases of defendant's property. The leases each contained options for renewal for three successive terms of five years each. When the leases were negotiated there was no written agreement for compensation between plaintiff and defendant, but there was an oral agreement that plaintiff was to be paid in three installments, one at the commencement of the leases, and one upon the exercise of each of the two successive options. Plaintiff billed defendant and received payment for the first two installments. When the second option to renew was exercised by the tenant, plaintiff again billed defendant for the third installment but defendant refused to pay. Several documents which passed between the parties after the services were rendered were introduced into evidence. In finding that they

failed to satisfy the requirements of sec. 240.10, Stats., this court said at pages 206, 207:

"Even if integrated we discover from them no mention of the period during which the broker is to find a tenant. The fact that he did find one does not eliminate the statutory requirement that the time be expressed in which he may do so. . . .

". . .

". . . In this respect there is no compliance, substantial or otherwise, with sec. 240.10, Stats., and that section declares that when the written memorandum, note, or contract fails to express the period during which the broker shall procure a tenant the agreement to pay him a commission shall be void. Appellant does not contend that the period is expressed anywhere in the writings on which it relies. It contends, only, that in circumstances such as these such expression is unnecessary. We are unable to agree; the legislature has directed otherwise."

Where the contract or memorandum does state that all services have been completed and is signed by the person promising to pay, there is little reason for finding the contract void because it does not state a time period during which the services had to be performed. In effect, the time period is designated by the promisor as being the time prior to his signing. In the *Elbinger Case, supra,* not only did the documents which passed between the parties fail to specify any time period, there was also a lack of any written promise to pay or statement that all of the contemplated services had been performed signed by the principal.

Though not specifically discussing the requirement that a time period for the performance of services be stated, in *Genske v. Leutner* (1926), 191 Wis. 125, 210 N. W. 369, this court found that a receipt given to a broker by the principal upon acceptance of a part of the purchase price was a sufficient memorandum to satisfy sec. 240.10, Stats., where it was signed by the principal and clearly

implied that the broker had done all that he was required to do.

Therefore, where an otherwise sufficient written memorandum is executed after the broker has performed his services, the fact that it specifically states that all services have been completed and it is signed by the principal should be deemed substantial compliance with the requirement of sec. 240.10 (1), Stats., that a time period be stated. As noted above, while the instant memorandum (the letter of July 17th) was signed by appellant, it does not clearly establish that respondent has performed all of the services required. If further services were contemplated, a time period for their completion should have been stated. Without one or the other of these facts appearing on the face of the memorandum it is deficient in this respect also. Again, the appellant contends this deficiency, if it be one, is satisfied by reference to collateral documents.

We now consider whether collateral documents can be referred to to supply the statutory requisites.

At the time this letter was written (July 17, 1967), there was already in existence an offer to purchase made by the appellant, H. R. Buckman, and accepted by the Megal Development Corporation, the seller of the Wisconsin Wire Works property (May 18, 1967), which provided in part:

". . . at the price of $671,125, unless a different amount is determined based upon a figure representing capitalization of the rent on an 8% net basis in the finally concluded lease between Wisconsin Wire Works Inc., and Megal Development Co., . . ."

The respondent, Schaefer, argues that any deficiency in the letter as to price is remedied by reference to this offer and acceptance. The appellant argues that the offer and acceptance may not be used to supply the missing

terms in the letter since the documents do not specifically refer to each other.

In addition to the terms set forth above, the offer and acceptance also provided:

"5. Buyer and Seller agree that any commission earned by or compensation to be paid to E. H. Schaefer & Associates, Inc., for its participation in this transaction is to be paid by Buyer."

As to whether the broker's services had been completed, the respondent contends this is conclusively established by the exhibits to its motion papers which show that the appellant, H. R. Buckman, in writing, offered the Wire Works property as a trade to the owners of the Milwaukee properties on May 25, 1967, which offer was accepted on June 19, 1967. And further by H. R. Buckman's letter of July 14th to Megal Development acknowledging that the final purchase figures have been arrived at.

The parties have cited many significant cases dealing with the integration of documents to arrive at a complete brokerage contract, but all of them were decided according to the peculiar facts of each case and they provide no clear standard for determining when several documents may be so integrated.

Initially, it is clear that as in a case of the statute of frauds generally, a brokerage agreement may consist of separate writings. In *Mitler v. Associated Contractors* (1958), 4 Wis. 2d 568, 573, 91 N. W. 2d 367, this court said:

". . . The statutory contract or memorandum may consist of separate writings, if such separate writings when construed together contain all the elements specified by the statute. Furthermore, the fact that the plaintiff was not a party to the contract of sale is immaterial because it was subscribed by the defendant who is the person who is claimed to have agreed to pay the commission."

In the *Mitler Case* the subsequent sales contract did make specific reference to a prior valid brokerage agreement, and the question was whether that agreement could be enlarged to cover additional real estate included in the sales contract but not in the brokerage agreement.

In *Gilbert v. Ludtke* (1957), 1 Wis. 2d 228, 83 N. W. 2d 669, a written brokerage agreement for the sale of real estate had expired and the owner wrote to the broker telling him that he could still sell the property. In holding that the letter did not effect an extension of the expired contract, this court said at page 233:

"In this case there was a contract that expired by its terms on May 23, 1952. The contract had no effect after that date unless it was extended by a contract or memorandum thereafter in compliance with the provisions of the statute. The letters to the plaintiff by the defendant Harold Ludtke, which are set out in the facts, are not in compliance with the provisions of the statute. No reference was made therein to the original contract. At best they were offers to negotiate a new contract. The termination date of the old contract could not be extended because the terms were different and, more important, some of the property previously listed for sale had been sold. The plaintiff made no attempt to accept the offers of the defendants by securing a valid contract based upon the offers contained in the letters. We cannot imply an extension of the old contract or a new contract."

Thus, although the court noted that the letter made no reference to the original contract, we do not believe this case stands for the proposition, as appellant contends, that several writings can never be incorporated to comply with sec. 240.10 (1), Stats., unless there are internal references to each other.

In *Wozny v. Basack, supra,* a brokerage agreement to find a tenant was deficient. However, the broker did find a tenant and a lease was subsequently executed. It was argued that the lease could be used to supply the terms missing from the brokerage agreement, but this court

rejected the argument stating that it had previously decided to the contrary, citing *Prinz v. Aussem, supra.*

In the *Prinz Case, supra,* a deficient commission contract had been executed which provided that payment would be made to the broker as it was received by the seller under a land contract. Subsequently the seller did enter into a land contract with a purchaser and the trial court concluded that the two documents could be integrated. In reversing that decision, this court said at page 607:

". . . In the first place, there was no land contract in existence at the time the commission contract was drawn, and, in the second place, the commission contract does not even attempt to make the future land contract a part of the commission contract. . . ."

The important factor in both *Wozny* and *Prinz, supra,* would appear to be that the lease and sales contracts were executed *after* the brokerage agreements, and neither one made any reference to the fact that they were executed as a result of the broker's services. If such contracts had been in existence prior to the execution of the commission agreements it is probable the lack of internal references to each other would not have been fatal to integration, and the result probably would have been different in both cases.

The principal purpose of sec. 240.10 (1), Stats., is to prevent fraud arising from parol testimony as to the terms and conditions of a brokerage contract. *Garvey v. Wenzel* (1956), 272 Wis. 606, 76 N. W. 2d 291; 12 Am. Jur. 2d, *Brokers,* p. 803, sec. 41. The section is meant to bar a broker's suit for a commission in circumstances where it is uncertain that he has performed the services for which his principal has agreed to pay. Where a sales contract or lease is executed subsequent to a deficient commission agreement and makes no reference to that agreement or to the fact that the broker has performed

his services, it is entirely possible that the broker has not performed in compliance with his agreement. But as the respondent, Schaefer, points out, the situation is quite different where the principal executes a written promise to pay the broker, though deficient under sec. 240.10 (1), for services rendered concerning a transaction in which he has already entered a legally binding contract. It is difficult to believe that a principal would execute such a promise if in fact the broker had not performed what he agreed to do. Therefore, if the defective commission agreement signed by the principal clearly refers to a certain transaction in which a binding lease or sales contract has previously been made, it does not defeat the purpose of sec. 240.10 (1) to allow the integration of that document into the commission agreement, even though there is not a specific reference to the document itself. However, if the reference to the same particular transaction is not clear and certain, then such integration should not be allowed, even in the case of a previously existing lease or sales contract.

In this case appellant's letter does not specifically refer to its written contract with the seller, but it does refer to the particular transaction in which the services were rendered, specifying the property by name. There can be no doubt that the commission agreement refers to precisely the same transaction as H. R. Buckman's contract to purchase from Megal Development, and both writings are signed by H. R. Buckman. Therefore there is no reason why the two writings should not be integrated to supply the terms missing from the letter.

We hold, therefore, that the several written documents can be integrated and as such satisfy the statute of frauds.

Because we have determined that the second affirmative defense does not establish a noncompliance with

sec. 240.10 (1), Stats., and the order striking it should be affirmed, it follows that the order denying the motion for summary judgment should likewise be affirmed.

The matter is remanded for trial of the remaining issues as determined from the pleadings.

*By the Court.*—Appeal from order dismissed in part; order affirmed in part and remanded for further proceedings.